(No. 47755.—

MARYLAND CASUALTY COMPANY, Appellee, v. ROBERT M. PEPPERS *et al.*, Appellees.—(St. Paul Fire & Marine Insurance Company, Appellant.)

*Opinion filed September 20, 1976.*

CREBS, J., took no part.

Ducey and Feder, Ltd., of Belleville (Cornelius T. Ducey, Jr., of counsel), for appellant.

Bernard J. Ysursa, of Sprague, Sprague & Ysursa, of Belleville, for appellee James W. Mims.

MR. JUSTICE RYAN delivered the opinion of the court:

Plaintiff, Maryland Casualty Company (Maryland), filed a suit for declaratory judgment against Robert and Tincy Peppers and James Mims for a declaration of whether under a policy of liability insurance there was a duty to defend its insured Peppers in a personal injury action filed by Mims, who had been shot by Robert Peppers, and for a declaration of whether there was coverage under the policy for this occurrence. Peppers later filed a counterclaim for declaratory judgment against St. Paul Fire & Marine Insurance Company (St. Paul) seeking a declaration that the occurrence was covered and that St. Paul was required to defend the personal injury action under a homeowner's insurance policy it had issued on Peppers' residence. The policies issued by Maryland and by St. Paul both specifically excluded coverage for injuries intentionally inflicted.

After a bench trial the circuit court of St. Clair County found that Peppers had intentionally caused the injury and therefore the occurrence was not covered by the Maryland policy and also found that the property on which the occurrence happened was not the property insured by the general liability policy issued by that company. As to St. Paul, the court found that the act was an intentional act and that this alone is sufficient to hold that there was no coverage. The court went on to state that the question was not one of coverage but whether or not St. Paul is now estopped from asserting that there is no coverage under its policy because it undertook the defense of Peppers. The court found that there was no coverage under the policy. However, it also found that St. Paul is obligated to defend Peppers. The appellate court affirmed the holding as to Maryland but modified the judgment as to St. Paul, holding that in addition to defending Peppers in the personal injury action St. Paul must also provide policy coverage for the occurrence. It was the opinion of the appellate court that because St. Paul had engaged attorneys to defend Peppers it was estopped from denying coverage under its policy. 29 Ill. App. 3d 26.

Robert and Tincy Peppers owned a tract of land facing Collinsville Road in East St. Louis. On January 18, 1971, three buildings, all owned by Peppers, were located on this land. A Pizza Hut was located at 8408½ Collinsville Road. There was no policy of insurance on this property covering liability for personal injuries. Next to the Pizza Hut at 8412 was a building which was insured by Maryland under a general liability policy. Adjacent to that building was Peppers' home at 8414, which was insured by St. Paul under a homeowner's policy of insurance. This policy also provided liability coverage in certain situations for personal injuries incurred off the property insured. Because the Pizza Hut had been burglarized on numerous occasions Peppers had been staying in that building at night. On January 18, 1971, Peppers was awakened by a noise at the door which he determined was caused by someone trying

to break in. When he went to the door he saw a person fleeing. He shouted for him to stop and then fired his shotgun, wounding the fleeing person, James Mims.

Peppers reported the incident to his insurance agent, who in turn reported it to Maryland. This company made an investigation, and on March 26, 1971, wrote to Peppers that the policy did not cover the premises at 8408½ and that the incident did not constitute an occurrence as defined in the policy. Thereafter on April 14, 1971, Mims filed his personal injury action against Robert Peppers. Peppers' personal attorney, James Massa, on May 13, 1971, filed a motion to dismiss the complaint. Although the record is somewhat sketchy it appears that on July 21, 1971, Peppers' attorney, Massa, sent a copy of the Mims complaint against Peppers to the insurance agent and requested him to forward it to St. Paul for a defense of the suit under the homeowner's policy. On August 26, 1971, Maryland filed a suit for declaratory judgment against Peppers and Mims for a declaration of its rights and obligations under its general policy of liability insurance on the premises located at 8412 Collinsville Road. On February 11, 1972, attorneys who were hired by St. Paul wrote Peppers that they had been employed by St. Paul to represent him in the Mims case. On the same day these attorneys filed an answer to the Mims complaint. On March 6, 1972, the court allowed these attorneys to withdraw the answer and to withdraw as counsel for Peppers, and it reinstated the motion to dismiss that had previously been filed by Peppers' personal attorney, Massa. On May 15, 1972, Peppers filed a counterclaim against St. Paul in the declaratory judgment action seeking a declaration of rights and liabilities under the homeowner's policy which had been issued to him by St. Paul.

The controlling question as to Maryland's coverage and duty to defend involves the location of the occurrence. The policy that company issued to Peppers and his wife was an "Owner's, Landlord's and Tenant's Liability

Policy" and was limited by its terms to pay on behalf of the insured all sums which the insured shall become legally obligated to pay for bodily injury or property damage caused by an occurrence and arising out of the ownership, maintenance, or use of the *insured premises.* The insured premises is described in the policy as 8412 Collinsville Road, East St. Louis, Illinois. The trial court found that this policy did not cover the occurrence in question, which arose out of the ownership, maintenance and use of the Pizza Hut located at 8408½ Collinsville Road. This finding is fully supported by the evidence. Also there is no evidence which in any way establishes that Maryland is estopped from denying coverage for this occurrence. There are also no allegations in Mims' complaint which, under the principles discussed later, would impose an obligation on Maryland to assume the defense of Peppers.

As to St. Paul, the trial court properly held that this company was obligated under its policy to defend Peppers in the Mims case. The complaint was in three counts. Count I alleged that Peppers had assaulted Mims with his shotgun. Count II alleged that Peppers had negligently and carelessly fired the shotgun at Mims, and count III alleged that Peppers had willfully and wantonly fired the shotgun at Mims. Thus, count I alleges only intentional injuries not covered by the policy, whereas the allegations of count II would not encompass an intentional injury, and the allegations of count III may or may not encompass intentional injuries. It appears from the complaint that Peppers is charged with both conduct for which the policy affords coverage and conduct for which it does not.

In determining whether the insurer owes a duty to the insured to defend an action brought against him, it is the general rule that the allegations of the complaint determine the duty. If the complaint alleges facts within the coverage of the policy or potentially within the coverage of the policy the duty to defend has been established. *Tiffiny Decorating Co. v. General Accident Fire & Life*

*Assurance Corp.,* 12 Ill. App. 3d 597; *Fragman Construction Co. v. Preston Construction Co.,* 1 Ill. App. 3d 1002; *Country Mutual Insurance Co. v. Murray,* 97 Ill. App. 2d 61; *McFadyen v. North River Insurance Co.,* 62 Ill. App. 2d 164; *Sims v. Illinois National Casualty Co.,* 43 Ill. App. 2d 184. See also Annot., 50 A.L.R.2d 458 (1956); 14 Couch on Insurance, sec. 51:40 (2d ed. 1965); 7A Appleman on Insurance, sec. 4683 (Supp. 1974).

This duty to defend extends to cases where the complaint alleges several causes of action or theories of recovery against an insured, one of which is within the coverage of a policy while the others may not be. (*Krutsinger v. Illinois Casualty Co.,* 10 Ill.2d 518; *Sims v. Illinois National Casualty Co.,* 43 Ill. App. 2d 184; *Rom v. Gephart,* 30 Ill. App. 2d199; *Canadian Radium & Uranium Corp. v. Indemnity Insurance Company of North America,* 342 Ill. App. 456, *rev'd on other grounds,* 411 Ill. 325; *Alm v. Hartford Fire Insurance Co.* (Wyo. 1962), 369 P.2d 216; *Butters v. City of Independence* (Mo. 1974), 513 S.W.2d 418; *Schurgast v. Schumann* (1968), 156 Conn. 471, 242 A.2d 695; *Babcock & Wilcox Co. v. Parsons Corp.* (8th Cir. 1970), 430 F.2d 531. See also Annots., 41 A.L.R.2d 434 (1955), 50 A.L.R.2d 458 (1956); 14 Couch on Insurance sec. 51:43 (1975-76 Supp.).) The trial court properly held that St. Paul was obligated to defend Peppers.

The appellate court held that St. Paul, by undertaking the defense of Peppers in the Mims case, is estopped to deny coverage under the policy. In considering the question of estoppel, it is helpful to again look at the chronology of events. The injury was inflicted on January 18, 1971, and Maryland was immediately notified by Peppers. That company made an investigation and informed Peppers on March 26, 1971, that there was no coverage under its policy of liability insurance. On April 14, 1971, Mims filed his personal injury suit against Peppers, who, through his personal attorney, Massa, filed a

motion to dismiss the complaint on May 13, 1971. Thus, Peppers was represented by his own counsel, who, so far as the record discloses, has never withdrawn his appearance. It was not until July 21, 1971, more than 3 months after the complaint was filed and more than 2 months after Peppers' attorney had entered his appearance and filed his motion to dismiss, that Peppers decided to look to St. Paul for a defense and for coverage under the homeowner's policy. At that time a copy of the complaint was sent to the insurance agent with the request that it be forwarded to St. Paul. The next action involving St. Paul as disclosed by the record is a letter from a firm of attorneys to Peppers on February 11, 1972, informing him that they had been employed by St. Paul to represent him and on the same day the filing of an answer in the Mims case by those attorneys. On March 6, 1972, 24 days later, these attorneys, with leave of court, withdrew the answer and their appearance for Peppers.

It is generally held that an insurer may be estopped from asserting a defense of noncoverage when the insurer undertakes the defense of an action against the insured. However, it is also the general rule that the undertaking must result in some prejudice to the insured. (See Annot., 38 A.L.R.2d 1148, 1157 (1954).) In *Gibraltar Insurance Co. v. Varkalis,* 46 Ill.2d 481, the insurer caused an answer and an appearance to be filed on behalf of its insured in a wrongful death action. Fourteen months later, during which time the insurer had continued the exclusive representation of the insured, the insurer advised the insured that it was representing him under a reservation of rights. Significantly, the court concluded that "[d]uring the interim [the insurer] acted on behalf of [the insured] as though no questions of policy coverage were involved, thus clearly causing him to wholly rely for his defense on the efforts of [the insurer]." (46 Ill.2d 481, 488.) Interpreting this language the court in *Northwestern National Insurance Co. v. Corley* (7th Cir. 1974), 503 F.2d

224, decided that the quoted language implicitly requires a showing of prejudice to the insured before estoppel is established. The appellate court of this State similarly construed *Gibraltar* in *Greater Chicago Auction, Inc. v. Abram,* 25 Ill. App. 3d 667.

Whether an insured is prejudiced by an insurer's conduct in entering an appearance and assuming the defense of an action is a question of fact. Prejudice will not be conclusively presumed from the mere entry of appearance and assumption of the defense. (*Northwestern National Insurance Co. v. Corley* (7th Cir. 1974), 503 F.2d 224; *Opheim v. Norfolk & Western Ry. Co.,* 123 Ill. App. 2d 211; *Apex Mutual Insurance Co. v. Christner,* 99 Ill. App. 2d 153.) If, however, by the insurer's assumption of the defense the insured has been induced to surrender his right to control his own defense, he has suffered a prejudice which will support a finding that the insurer is estopped to deny policy coverage.

There is nothing in the record to establish that Peppers was not at all times represented by his own attorney, Massa, or that in reliance on the attorneys hired by St. Paul he was induced to surrender the right to conduct his own defense. The finding of the trial court that St. Paul was not estopped to deny coverage is not contrary to the manifest weight of the evidence.

As stated earlier, the trial court, in the declaratory judgment action, found that Peppers had intentionally caused the injury to Mims. By virtue of the interrelation of the various issues involved in the litigation between Mims and Peppers and between Peppers and St. Paul we must conclude that this finding by the trial court constituted an abuse of the discretion vested in it by section 57.1 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 57.1).

Mims' complaint against Peppers had been filed more than 4 months before Maryland filed the original complaint for declaratory judgment and 13 months before Peppers, by way of counterclaim, sought a declaration of

his rights under his policy of insurance with St. Paul. The Mims complaint was in three counts. Under the principle of collateral estoppel the finding in the declaratory judgment action that the injury was intentionally inflicted could possibly establish the allegations of the assault count in the complaint and might preclude Mims' right to recover under the other theories alleged. (See *Farmers Oil and Supply Co. v. Illinois Central R.R. Co.*, 6 Ill. App. 3d 965; 22 Am. Jur. 2d *Declaratory Judgments*, sec. 102 (1965).) In a case quite similar to ours the appellate court held that the ruling and judgment of the trial court in a declaratory judgment action under such circumstances were "premature" and should be reversed. (*Allstate Insurance Co. v. Gleason*, 50 Ill. App. 2d 207.) We agree with that holding. The finding of the trial court in our case that the injury was intentional was not proper in this declaratory judgment action. This issue was one of the ultimate facts upon which recovery is predicated in the Mims personal injury action against Peppers, which had been filed considerably before the declaratory judgment action had been instituted. See also *Fairbanks, Morse & Co. v. City of Freeport*, 5 Ill.2d 85; *Charleston National Bank v. Muller*, 16 Ill. App. 3d 380; *Andrews v. Porter*, 70 Ill. App. 2d 202; *Wolf v. Solem*, 26 Ill. App. 2d 262.

The holding that St. Paul is obligated to defend Peppers and that it was not proper in the declaratory judgment action to determine that the injury was intentional creates a situation in which there is an unresolved conflict between the interests of the insured and of the insurer. In the personal injury action if Peppers is held responsible, it would be to his interest to be found negligent, which, under the policy of insurance, would place the financial loss on St. Paul. On the other hand it would be to St. Paul's interest to have a determination that Peppers intentionally injured Mims, which, by the terms of the policy, would relieve St. Paul of the obligation to pay the judgment. The existence of conflicts of this nature has

been widely recognized by the courts and writers, with little accord as to the resolution of the problem. (See *Glens Falls Insurance Co. v. American Oil Co.* (1969), 254 Md. 120, 254 A.2d 658; *Harbin v. Assurance Co. of America* (10th Cir. 1962), 308 F.2d 748; *Magoun v. Liberty Mutual Insurance Co.* (1964), 346 Mass. 677, 195 N.E.2d 514; *Satterwhite v. Stolz* (N.M. App. 1968), 79 N.M. 320, 442 P.2d 810; *Employers' Fire Insurance Co. v. Beals* (1968), 103 R.I. 623, 240 A.2d 397; *Burd v. Sussex Mutual Insurance Co.* (1970), 56 N.J. 383, 267 A.2d 7; 14 Couch on Insurance sec. 51:43.1 (1975-76 Supp.); Comment, *The Insurer's Duty to Defend Under a Liability Insurance Policy,* 114 U. Pa. L. Rev. 734 (1966); Comment, *Insurance Company's Dilemma: Defending Actions Against the Assured,* 2 Stan. L. Rev. 383 (1950); Note, *Use of the Declaratory Judgment to Determine a Liability Insurer's Duty to Defend—Conflict of Interests,* 41 Ind. L.J. 87 (1965); Keeton, *Ancillary Rights of the Insured Against His Liability Insurer,* 28 Ins. Counsel J. 395 (1961).

Because of this conflict of interests, serious ethical questions prohibit an attorney from representing both the interests of St. Paul and of Peppers. (See Illinois Code of Professional Responsibility, E.C. 5—14, 5—15, 5—17 (1970), adopted by the Board of Governors of the Illinois State Bar Association and the Board of Managers of the Chicago Bar Association.) If Peppers is willing to accept the defense furnished by the attorney engaged by St. Paul after full disclosure to him by the attorney of the conflicting interests, the requirement of the Code of Professional Responsibility will be satisfied. Also, if St. Paul waives its defense of noncoverage by the policy of an intentional injury and defends without asserting a reservation of rights or nonwaiver agreement as to such an injury the conflict of interests will be removed.

Absent the acceptance of the defense by Peppers or the waiver by St. Paul, Peppers has the right to be

defended in the personal injury case by an attorney of his own choice who shall have the right to control the conduct of the case. By reason of St. Paul's contractual obligation to furnish Peppers a defense it must reimburse him for the reasonable cost of defending the action. Also, St. Paul is entitled to have an attorney of its choosing participate in all phases of this litigation subject to the control of the case by Peppers' attorney, and St. Paul is not barred from subsequently raising the defense of noncoverage in a suit on the policy.

The judgment of the appellate court affirming the circuit court as to Maryland Casualty Company is affirmed. The judgment of the appellate court holding that St. Paul Fire & Marine Insurance Company is estopped to deny coverage under its policy is reversed. The judgment of the circuit court of St. Clair County is affirmed, but its finding that the injury was not within the coverage of either policy because it was intentionally inflicted is vacated.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and vacated in part.*

MR. JUSTICE CREBS took no part in the consideration or decision of this case.