Victor MANEIKIS, Plaintiff-Appellant,

v.

ST. PAUL INSURANCE COMPANY OF ILLINOIS, Defendant-Appellee.

No. 80–1880.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1981.

Decided Aug. 4, 1981.

---

John G. Jacobs, Chicago, Ill., for plaintiff-appellant.

Michael C. Kominiarek, Chicago, Ill., for defendant-appellee.

Before PELL and WOOD, Circuit Judges, and SPEARS, Senior District Judge.*

PELL, Circuit Judge.

The plaintiff, Victor Maneikis, assignee of the insured, Manuel Solotke, appeals from the district court's grant of summary judgment in favor of the defendant insurance company, St. Paul Insurance Company of Illinois (St. Paul), and denial of the plaintiff's cross-motion for summary judgment. Jurisdiction is based upon diversity of citizenship.

The present case originated from a separate lawsuit filed by Maneikis against Solotke and two other persons on December 31, 1974, in federal district court. Maneikis charged the defendants in that suit with fraud, false representation, breach of fiduciary duty, and the violation of Solotke's duties as Maneikis' attorney. These charges allegedly arose out of Solotke's efforts to induce Maneikis to enter into an unpropitious licensing arrangement for the production and sale of carburetor performance boosters.

Solotke was insured by St. Paul under a professional liability policy which covered actions taken in his capacity as an attorney, but excluded liability for dishonest, fraudulent, criminal, or malicious acts or omissions. Solotke failed to notify St. Paul at the time Maneikis first filed suit apparently because Solotke believed that the acts charged fell within the policy's exclusions.

On June 20, 1978, Maneikis filed a pretrial memorandum which clearly indicated that he sought recovery on theories of fraud and simple malpractice. The following day,

* Adrian A. Spears, Senior District Judge for the Western District of Texas, is sitting by designation.

Solotke's attorney advised St. Paul of the lawsuit for the first time and requested St. Paul to defend Solotke. After reviewing the complaint and a portion of the pretrial memorandum, counsel for St. Paul informed Solotke by letter dated August 1, 1978, that the complaint did not allege acts covered by the policy. He further suggested that Solotke file a motion to strike that part of the pretrial memorandum referring to malpractice "as not conforming with the pleadings," and declared that "[t]his type of motion would not jeopardize Mr. Solotke's malpractice coverage." Finally, counsel for St. Paul requested that Solotke keep him informed of the progress of the case.

Solotke's attorney replied, on September 14, 1978, that he would not move to strike as the insurance company had suggested, but he welcomed St. Paul to enter into the case and make any motion it deemed appropriate to protect its interests. He further advised St. Paul that he would seek from St. Paul indemnification on behalf of Solotke and payment of fees incurred in Solotke's defense. The insurer, however, failed to answer or take any action in the case.

Solotke's counsel again got in touch with St. Paul on July 24, 1979, to report a proposed settlement agreement of $200,000 to be satisfied by a payment of $50,000 cash and the assignment to Maneikis of Solotke's rights against St. Paul under the professional liability policy. Solotke's attorney advised St. Paul that Solotke would conclude this settlement unless the insurer agreed to defend and indemnify Solotke according to the terms of the policy.

On August 2, 1979, St. Paul reiterated that it would neither defend nor indemnify Solotke, and for the first time asserted that Solotke's failure to give St. Paul timely notice as required by the policy precluded

any rights he might have had under the policy. The company also claimed that the policy prohibited any assignment of rights to third parties without the consent of the insurer.

The parties subsequently executed the settlement agreement thereby dismissing Solotke from the suit.[1] On September 10, 1979, Maneikis filed the present lawsuit against St. Paul. Both parties filed motions for summary judgment.[2] The trial court granted St. Paul's motion and denied Maneikis' cross-motion.

In this appeal the plaintiff contests the court's findings that (1) St. Paul had not waived its right, nor was it estopped, to assert the late notice policy defense, and (2) Solotke failed to give timely notice which barred recovery. The insurer defends these findings and reasserts additional arguments not ruled upon by the district court.

Under well-settled Illinois law, only three options are available to a liability insurer requested to defend an insured against claims which the insurer believes exceed policy coverage. The insurer can (1) seek a declaratory judgment regarding its obligations before or pending trial of the underlying action, (2) defend the insured under a reservation of rights, or (3) refuse either to defend or to seek a declaratory judgment at the insurer's peril that it might later be found to have breached its duty to defend. Once an insurer violates its duty to defend, it is estopped to deny policy coverage in a subsequent lawsuit by the insured or the insured's assignee.[3] *See, e. g., Thornton v. Paul*, 74 Ill.2d 132, 23 Ill. Dec. 541, 384 N.E.2d 335, 340 (1978); *La Rotunda v. Royal Globe Insurance Co.*, 87 Ill.App.3d 446, 42 Ill.Dec. 219, 408 N.E.2d 928, 935 (1980); *Murphy v. Clancy*, 83 Ill. App.3d 779, 38 Ill.Dec. 863, 404 N.E.2d 287,

---

1. The defendant's contention on appeal that no evidence of execution was presented below is discussed separately hereinafter.

2. Actually, the defendant's motion was denominated as a motion to dismiss, but the court treated it as a motion for summary judgment in accordance with Fed.R.Civ.P. 12(b) because the

insurer included affidavits and other supporting documents with its motion.

3. The only exception to this rule, as discussed separately hereinafter, appears to occur when the interests of the insurer and the insured conflict. *Thornton v. Paul*, 74 Ill.2d 132, 23 Ill.Dec. 541, 384 N.E.2d 335, 343 (1978).

296–97, 298 (1980); *Associated Indemnity Co. v. Insurance Co. of North America,* 68 Ill.App.3d 807, 25 Ill.Dec. 258, 386 N.E.2d 529, 540 (1979); *Reis v. Aetna Casualty & Surety Co.,* 69 Ill.App.3d 777, 782–83, 25 Ill.Dec. 824, 828–29, 387 N.E.2d 700, 704–05 (1978); *Solo Cup Co. v. Federal Insurance Co.,* 619 F.2d 1178, 1184 (7th Cir.), *cert. denied,* 449 U.S. 1033, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980) (applying Illinois law). This equitable estoppel is based upon the principle that "the insurer has no right to insist that the insured be bound by the provisions of the insurance contract inuring to its benefit, ... when it has already breached the contract by violating the provisions inuring to the benefit of the insured ...." *Sims v. Illinois National Casualty Co.,* 43 Ill.App.2d 184, 197, 193 N.E.2d 123, 129 (1963), *quoted in Associated Indemnity, supra,* 386 N.E.2d at 540. The estoppel arises at the moment the insurance company wrongfully refuses to defend. *Murphy v. Clancy, supra,* 38 Ill.Dec. 863, 404 N.E.2d at 298; *Associated Indemnity, supra,* 25 Ill. Dec. 258, 386 N.E.2d at 541; *Sims, supra,* 193 N.E.2d at 128–29.

■■■ The appropriate inquiry in a subsequent lawsuit against the insurer, therefore, is whether the insurer's initial refusal to defend breached the insurance contract. Since an insurer's duty to defend is broader than its duty to indemnify in Illinois, an insurer's refusal to defend is wrongful if the allegations in the underlying lawsuit are even *potentially* within the scope of the policy, *see, e. g., La Rotunda, supra,* 42 Ill.Dec. 219, 408 N.E.2d at 933; *Solo Cup, supra,* 619 F.2d at 1183, with any doubts as to coverage to be resolved in favor of the insured. *La Rotunda, supra,* 42 Ill.Dec. 219, 408 N.E.2d at 933; *Reis v. Aetna Casualty, supra,* 25 Ill.Dec. 824, 387 N.E.2d at 706. Even if recovery in the underlying suit is premised upon several theories of liability, some of which are excluded from policy coverage, the insurer still is obligated to defend if even one theory falls within the policy's coverage. *Maryland Casualty Co.*

*v. Peppers,* 64 Ill.2d 187, 355 N.E.2d 24, 28 (1976); *Solo Cup, supra,* 619 F.2d at 1183.

In the case at bar, the district court found that Solotke's failure to notify St. Paul of the lawsuit against him in a timely fashion precluded recovery. Although the court acknowledged the existence of case law forbidding an insurer to raise policy defenses once it wrongfully refuses to defend its insured, the court applied what it identified as a second line of authority purportedly providing "that an insurer may waive a policy provision only if it possesses knowledge of all relevant facts, clearly expresses an intent to waive that provision, and the insured relies on the waiver to his detriment." The court found that the first two requirements of this test were satisfied, but ruled that Solotke had not relied to his detriment upon St. Paul's failure to assert the late notice defense when first notified of Solotke's claim.

We need not decide whether the district court's finding of no reliance was clearly erroneous because, under a proper analysis of the case, the court should not have entertained the late notice defense. None of the cases cited by the district court apply to the factual situation of the case at bar. *Canadian Universal Insurance Co. v. Northwest Hospital, Inc.,* 389 F.2d 559 (7th Cir. 1968), and *Home Indemnity Co. of New York v. Allen,* 190 F.2d 490 (7th Cir. 1951), cited by the district court, considered the late notice defense precisely because the insurance companies in those cases asserted that justification in a declaratory judgment action. The insurers did not simply refuse to defend and wait to be sued by their insureds as did St. Paul in the instant case. Similarly, the venerable case of *Sandoval Zinc Co. v. New Amsterdam Casualty Co.,* 140 Ill. App. 247, *aff'd,* 235 Ill. 306, 85 N.E. 219 (1908), is inapposite because it too was not a wrongful refusal to defend case. The insurance company in *Sandoval* did not deny liability upon notification of the underlying lawsuit. Rather, it admitted liability and apparently attempted to carry out its obli-

gation to defend the insured, albeit negligently.[4]

*Ladd Construction Co. v. Insurance Co. of North America*, 73 Ill.App.3d 43, 29 Ill.Dec. 305, 391 N.E.2d 568 (1979), cited by St. Paul, is also inapposite. There, the insurer had initially refused to defend on the basis that no "occurrence" or "property damage" was alleged in the underlying lawsuit which sought only injunctive relief. Later, the company asserted that the policy did not cover suits in equity. The court ruled that the insurer was not estopped to assert, nor had it waived, this latter ground. This finding was perhaps unfortunate because the crucial issue actually appeared to be whether or not the initial refusal to defend was wrongful. If the policy did not afford even potential coverage at the time of denial, then the insurer's refusal to defend was not actionable regardless of the reasons stated in or omitted from its original refusal. Estoppel arises only if the initial refusal was wrongful. *Ladd* failed to mention cases mandating the application of an estoppel analysis in the duty to defend situation, and instead referred to the general insurance law principle that

> [a]n insurance company is not required to raise all possible defenses in its letter to the insured. Failure to raise all defenses does not result in a per se waiver of the same. *Tibbs v. Great Central Insurance Company* (1978), 57 Ill.App.3d 866, 15 Ill. Dec. 146, 373 N.E.2d 492.

29 Ill.Dec. 305, 391 N.E.2d at 573. *Ladd's* reliance on *Tibbs*, however, is misplaced because the insured in *Tibbs* was only seeking recovery for a simple fire loss which did not involve a duty to defend. The distinction is crucial. The contractual obligation to defend raises unique problems which cannot always be addressed by general rules of insurance law because the insurer has not just contracted to protect the insured against liability, but has also agreed to relieve the insured of the burden of defending lawsuits seeking to establish that liability. Consequently, "where there is potential coverage, but the insurer believes a valid exclusionary clause may be applicable, the insurer cannot simply abandon the insured." *Associated Indemnity Co. v. Insurance Co. of North America, supra*, 25 Ill.Dec. 258, 386 N.E.2d at 540.

Our inquiry, therefore, is limited to a determination of whether St. Paul wrongfully failed to defend Solotke. The propriety of St. Paul's August 1, 1978, refusal to defend requires an examination of the complaint in the underlying lawsuit as well as any facts outside the complaint which were known to the insured. *La Rotunda, supra*, 42 Ill.Dec. 219, 408 N.E.2d at 934; *Associated Indemnity, supra*, 25 Ill. Dec. 258, 386 N.E.2d at 536. St. Paul's letter refusing coverage explicitly admits that counsel for St. Paul had reviewed both the complaint and a portion of the pretrial memorandum filed by Maneikis. Although it alleged fraud and false representation, that part of the pretrial memorandum examined by St. Paul also clearly predicated liability on simple malpractice as well. Attorney malpractice was plainly included[5]

---

4. In *Sandoval*, the insurer's agent conducted negotiations with the party suing the insured in an attempt to settle the underlying lawsuit. Meanwhile, the insured, having been advised that the insurance company would assume the defense, failed to defend the underlying lawsuit. The insurance company also failed to defend, and a default judgment was entered against the insured. Subsequently, the insurer attempted to set aside the default judgment.

We are also unpersuaded by the district court's reliance on *Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.*, 70 Ill. App.3d 296, 26 Ill.Dec. 629, 388 N.E.2d 253 (1979); *INA Insurance Co. of Illinois v. City of Chicago*, 62 Ill.App.3d 80, 19 Ill.Dec. 519, 379 N.E.2d 34 (1978); and *City of Chicago v. Unit-*ed States Fire Insurance Co., 124 Ill.App.2d 340, 260 N.E.2d 276 (1970), to establish that an insured's failure to provide prompt notice bars any liability under the policy. All of these cases addressed the late notice issue in the context of a declaratory judgment action.

5. We reject St. Paul's assertion that no potential coverage existed because the acts alleged predated the effective date of the insurance policy. The insurance policy became effective at 12:01 a. m. on February 28, 1974. Maneikis sought recovery for acts occurring "during the period from the fall of 1973 through the *spring* of 1974" (emphasis added) which would at least have covered the consummation of a real estate transaction on February 28, 1974. The

within the scope of Solotke's policy which provided coverage for:

all sums which the Insured shall become legally obligated to pay as damages arising out of the performance of professional services for others in the Insured's capacity as a lawyer and caused by the Insured ... and the Company shall have the right and duty to defend ... any suit against the Insured alleging money damages which are payable under the terms of this Policy, even if such suit is groundless, false or fraudulent .... .

■ In its August 1st letter refusing to defend Solotke, St. Paul did not cite late notice as a reason for its denial of coverage. Even had St. Paul raised that defense in its letter of refusal, however, it would still be estopped to deny coverage on that basis in this action. In *La Rotunda, supra,* 42 Ill. Dec. 219, 408 N.E.2d at 935, the court ruled that the defendant-insurer was estopped to deny coverage even though the company had claimed late notice when it first notified the insured that it would not defend. The court reasoned that "if the insurer thought it had received notice too late to trigger its obligations, it should have litigated that fact in a declaratory judgment action or defended under a reservation of rights...." *Id.*

St. Paul also urges that it was precluded by *Thornton v. Paul,* 74 Ill.2d 132, 23 Ill. Dec. 541, 384 N.E.2d 335 (1978), from representing Solotke in the underlying lawsuit because a conflict of interest existed between Solotke and St. Paul. While reaffirming the general rule that an insurer's wrongful failure to defend estops it later to assert policy defenses or noncoverage, the Illinois Supreme Court carved out a narrow exception to that rule where representation would create a direct and serious conflict of interest between the insured and the insurer. The insured in *Thornton* was originally

sued for intentional battery, but the complaint was later amended to include negligence in order to bring the action within potential policy coverage. Thus, potential coverage arose which implicated the insurer's duty to defend even though the insured had already been convicted of battery for the act alleged in the tort action. The insurer refused to defend. The parties in the underlying lawsuit entered into an agreement absolving the insured of all liability in exchange for $100 and the right to pursue the insurer. This agreement was not disclosed to the insurer or to the court which subsequently entered a default judgment against the insured.

The court ruled that the insurer's refusal to defend did not bar it from raising the defense of noncoverage (because of an "assault and battery" exclusion) in the subsequent garnishment action brought by the insured's assignee. The court reasoned that, while the insured's interest in the tort action obviously was to avoid any liability, the insurer's interest "would not necessarily lie in a finding of not guilty, but would have been just as well served by a finding that the defendant was guilty by virtue of having committed a battery upon the plaintiff." 23 Ill.Dec. 541, 384 N.E.2d at 343. The conflict would not have been alleviated had the insurer brought a declaratory judgment action to determine its liability because a judgment in the insurer's favor, *i. e.* that a battery had occurred, would have bound the insured in the underlying tort action because "[i]n a declaratory judgment action, injured claimants are proper and necessary parties and the judgment in such an action is binding under the doctrine of collateral estoppel as to the facts determined by the judgment and would preclude parties to the action from relitigating them." *Id.,* 23 Ill.Dec. 541, 384 N.E.2d at 345. The court ruled that the insurer's

---

insurer's duty to defend is implicated if some, but not all, of the acts alleged occurred within the effective dates of policy coverage. *Cf. Maryland Casualty Co. v. Peppers,* 64 Ill.2d 187, 355 N.E.2d 24, 28 (1976) (the duty to defend is established if facts are alleged which fall potentially within policy coverage); *St.*

*Paul Fire & Marine Insurance Co. v. Sears, Roebuck & Co.,* 603 F.2d 780, 786 (9th Cir. 1979) (under analogous California law, presence of any potential recovery under the policy obligates the insurer to defend even if the majority of the insured's liability would not be within policy coverage).

obligation to provide a defense in a conflict of interest situation should be satisfied by reimbursing the insured for defense costs. *Id.*, 23 Ill.Dec. 541, 384 N.E.2d at 343.

In *Thornton*, liability could have been imposed upon the insured either (1) because he committed a battery in which case the act was excluded from policy coverage, or (2) because he was negligent in which case he could recover from the insurer. The act was either intentional or negligent. It could not have been both. Thus, the insurer and the insured were complete adversaries on a crucial issue which would necessarily be decided *either* one way *or* the other if liability was imposed. The few subsequent Illinois cases invoking the *Thornton* exception all have similarly contained a disputed issue which by its nature could only resolve into one of two mutually exclusive outcomes, one of which would benefit the insurer, one of which would benefit the insured. *Home Insurance Co. v. Lorelei Restaurant Co.*, 83 Ill.App.3d 1083, 39 Ill.Dec. 304, 404 N.E.2d 895, 898 (1980) (arson or negligence); *Aetna Casualty & Surety Co. v. Dichtl*, 78 Ill.App.3d 970, 34 Ill.Dec. 759, 398 N.E.2d 582, 586 (1979) (the insured killed her husband either intentionally or because she was insane); *Associated Indemnity Co. v. Insurance Co. of North America*, 68 Ill.App.3d 807, 25 Ill.Dec. 258, 386 N.E.2d 529, 539 (1979) (driver was either an agent or an independent contractor).

In *Murphy v. Clancy*, 83 Ill.App.3d 779, 38 Ill.Dec. 863, 404 N.E.2d 287 (1980), the court refused to apply the *Thornton* exception where the insurer's defense, that the defendant bus driver was not a permissive user covered by the bus owners' policy, was not *identical* to the related issue in the tort action, whether the driver was the owners' agent acting within the scope of his authority. The court acknowledged the supreme court's caution in *Thornton* that "[o]ur holding in this case is not a repudiation of the holding of *Sims*, but is a narrow exception to that holding applicable only under conditions such as are presented in the present case." 38 Ill.Dec. 863, 404 N.E.2d at 297, quoting *Thornton v. Paul, supra*, 23 Ill.Dec. 541, 384 N.E.2d at 346. *Murphy* admonished that

[i]t is clear from *Thornton* that a mere denial of liability does not, in itself, create such a conflict as to excuse the insurer from conducting the tort defense. Were we to so rule, we would be overturning the estoppel rule laid down in *Sims* which the Illinois Supreme Court in *Thornton* expressly stated it would not do. Rather, it seems clear that the "narrow exception" to the *Sims* rule laid down in *Thornton* is only applicable when the insurer's and the insured's interests in the conduct of the tort action are in *serious conflict.*

38 Ill.Dec. 863, 404 N.E.2d at 298 (emphasis added).

We do not believe the conflict in the case at bar is serious enough to merit the application of the *Thornton* exception. The potential conflict of interest between the insured and the insurer is less than complete. St. Paul had an interest in establishing that Solotke was not liable under any theory. It admittedly would also have benefitted from a finding that Solotke was liable providing that liability was based solely upon fraudulent conduct since the policy excluded coverage for "any dishonest, fraudulent, criminal or malicious act or omission." Malpractice and fraud, however, are not mutually exclusive theories of recovery. Thus, we do not have the either/or situation that was present in *Thornton* and in all subsequent cases which have applied the *Thornton* exception.

It is possible for the same act to give rise to claims of both malpractice and fraud. Of course, if Solotke was found liable solely because every wrongful act or omission alleged was found to be fraudulent or dishonest, St. Paul would not have to pay the judgment. Because fraud requires a greater burden of proof than malpractice, however, St. Paul's interests would more realistically be served by a finding that Solotke was not guilty of *any* misconduct. It would be against St. Paul's best interests to attempt to establish that Solotke breached his duties as an attorney because if Maneikis

could not sustain the heavy burden of proving that *every* wrongful act charged was fraudulent, he doubtless would be eager to prevail upon a finding of simple malpractice on some or all of the counts, thereby imposing liability upon St. Paul.

Maneikis' pretrial memorandum also indicates that, apart from any alleged fraudulent acts, he separately sought recovery from Solotke for malpractice in representing Maneikis without disclosing Solotke's beneficial interest in the transaction. Maneikis sought recovery for this particular omission as "malpractice *as a matter of law* and that *plaintiff is entitled to judgment prior to trial* . . . leaving only damages to be tried." (Emphasis in original.) Thus, it appears that Maneikis sought judgment on this aspect of the case solely upon a malpractice theory and before proceeding to trial on the other claims. Solotke's and St. Paul's interest in defending against this charge would therefore have been synonymous.

■ St. Paul next contends that Maneikis, as Solotke's assignee, has no right to maintain this action against the insurer because the insurance policy forbade any assignment of interest under the policy without the insurer's consent. This policy provision, however, can only prohibit assignment of policy coverage, not assignment of an accrued cause of action. In *Brown v. State Farm Mutual Automobile Insurance Association*, 1 Ill.App.3d 47, 272 N.E.2d 261, 264 (1971), the court rejected the very argument advanced here, noting that "[s]uch

provision against assignment has been held not to bar the assignment of the cause of action after the loss has occurred."

■ In its supplemental brief, St. Paul questions whether the settlement agreement was actually executed because the defendant alleges that no proof has been presented (1) of the $50,000 payment from Solotke to Maneikis, and (2) of the signed settlement agreement itself. This issue was never squarely presented at trial,[6] and was not one of St. Paul's points on appeal in the original briefing. Nevertheless there was some evidence in the record from which the trial judge could have found that a valid contract was executed. In an affidavit attached to the plaintiff's motion for summary judgment, one of Maneikis' attorneys explicitly attested that the settlement agreement had been executed on August 9, 1979. While not necessary to its result, the district court apparently was satisfied with the validity of the execution because it found that Solotke and Maneikis had entered into the settlement agreement, and that Solotke had been dismissed in the underlying lawsuit pursuant to the agreement.

■ On March 20, 1981, Maneikis filed a motion[7] in this court to strike a reference in the defendant's supplemental brief to the plaintiff's alleged failure to prove the execution, or in the alternative, to supplement the record with photocopies of (1) a $50,000 cashier's check from Solotke to Maneikis dated August 8, 1979, and (2) the signature pages of the settlement agreement and the

6. St. Paul explicitly questioned the agreement's validity only in terms of the effect of the insurance policy provision discussed above which prohibited an assignment of interest without the insurer's consent. The defendant's passing references to Maneikis as an "alleged assignee" and to the contract's "alleged execution" were insufficient to properly place the particular dispute over execution in issue, particularly where St. Paul elsewhere relied upon the validity of the agreement, both at trial and on appeal, to argue that the settlement rendered Maneikis' cause of action moot. Nor did St. Paul argue the validity of the execution as one of its original points on appeal. While an appellate court will ordinarily decline to address an issue not

properly presented to the trial court, *Laketon Asphalt Refining, Inc. v. United States Department of the Interior*, 624 F.2d 784, 788 (7th Cir. 1980), we will assume *arguendo* that this is an exceptional case permitting consideration, *see, e. g., Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1333–34 (7th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977), since the execution of the settlement agreement is a necessary predicate to the plaintiff's capacity to prosecute the instant lawsuit.

7. By order of April 2, 1981, this court determined that the motion would be taken with the case for decision.

assignment.[8] In response, St. Paul offers no more compelling reason to deny the plaintiff's motion than its argument that Maneikis should have presented this evidence in the trial, not appellate, court. While we would generally agree, the defendant cannot use its own failure to place the matter fairly in issue below as an excuse to silence the plaintiff at this stage. Accordingly, the plaintiff's motion to strike is denied, the motion to supplement is hereby granted.

Whether the execution of the agreement is viewed as a district court finding reviewable under the clearly erroneous standard, or an issue squarely decided for the first time on appeal, the evidence of record suggests no reason to doubt the validity of the settlement agreement, and hence, Maneikis' ability to prosecute this lawsuit.

We also reject St. Paul's claim that the settlement agreement executed by Solotke and Maneikis bars Maneikis' present action against St. Paul. The insurer seems to argue that by granting Solotke a covenant not to sue, and by accepting Solotke's promises (1) not to sue Maneikis and (2) to pay Maneikis $50,000, Maneikis "has been reimbursed for any loss he might have sustained." Therefore, St. Paul argues, any judgment against St. Paul would constitute a double recovery. This argument overlooks the fact that the parties settled for $200,000 to be satisfied by $50,000 cash *and* the assignment to Maneikis of all of Solotke's rights against St. Paul. The agreement, by its terms, clearly contemplated that the $50,000 represented only partial payment for Solotke's dismissal.

An insurer's wrongful refusal to defend permits the insured to negotiate a reasonable settlement. *La Rotunda, supra,* 42 Ill.Dec. 219, 408 N.E.2d at 936; *Loeber Motors, Inc. v. Sims,* 34 Ill.App.3d 342, 340 N.E.2d 132, 136 (1975). There is no indication that the amount of the settlement in this case was unreasonable. As the plaintiff pointed out in the court below, his pretrial memorandum in the tort action "showed the documented compensatory damages to be in excess of $300,000, exclusive of any prayer for punitive damages or attorneys' fees." The $200,000 settlement was also considerably less than the one million dollar policy limit. The parties apprised the court of the settlement and Solotke's attorney notified St. Paul of the proposed agreement before it was executed. He advised the insurer that the settlement would only be executed if St. Paul continued to refuse to extend a defense and indemnification to Solotke. St. Paul responded by again denying liability, but in no way contested the reasonableness of the settlement agreement. Under Illinois law, an insurer which breaches its duty to defend is liable for defense costs and the amount of any judgment or settlement. *Aetna Casualty & Surety Co. v. Coronet Insurance Co.,* 44 Ill.App.3d 744, 3 Ill.Dec. 371, 358 N.E.2d 914, 918 (1976); *Sims v. Illinois National Casualty, supra,* 193 N.E.2d at 127–28; *J. L. Simmons Co. v. The Fidelity & Casualty Co.,* 511 F.2d 87, 90 (7th Cir. 1975) (applying Illinois law).

The plaintiff's recovery of the settlement amount of $200,000 will not cause him to recover more than bargained for under the terms of the settlement agreement even though he has independently received $50,000 from Solotke. The settlement agreement valued the assignment of the cause of action at $150,000, but further stipulated that any recovery by Maneikis over $150,000 inures exclusively to his benefit. The parties recognized the inherent difficulty in valuing a cause of action by alternatively providing that if Maneikis failed to recover any amount from St. Paul, Solotke would nonetheless be relieved of all liability. Although they valued the cause of action to equal $150,000 "for the purpose of this Settlement Agreement," that amount cannot limit St. Paul's liability to Maneikis because Solotke assigned all of his

---

8. The settlement agreement was executed by the parties on separate signature pages as permitted by paragraph 10 of the agreement.

rights under the policy to Maneikis. Solotke himself could have recovered the total amount of the settlement and defense costs. Therefore, because an assignee stands in the shoes of the assignor and acquires all of the assignor's interests in the cause of action assigned, *Litwin v. Timbercrest Estates, Inc.*, 37 Ill.App.3d 956, 347 N.E.2d 378, 379 (1976), Maneikis is entitled to recover the entire amount of the settlement agreement.

For the foregoing reasons, the judgment of the district court awarding summary judgment to St. Paul, and denying Maneikis' motion for summary judgment, is reversed, and the cause remanded with instructions to enter judgment on behalf of the plaintiff in the amount of (1) the $200,-000 settlement and (2) the costs subsequent to August 1, 1978, of Solotke's defense of the lawsuit brought against him by Maneikis which is to be determined.

Reversed and Remanded With Instructions.