NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190831-U

NO. 4-19-0831

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 21, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| PEKIN INSURANCE COMPANY, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| and | ) | Coles County |
| KCJ CONSULTING, INC., an Illinois Corporation; | ) | No. 19MR114 |
| KIRBY C. JOHNSON, Individually and d/b/a | ) | |
| Positively 4th Street Records; and MINERVA | ) | |
| SPORTSWEAR, INC., an Illinois Corporation, | ) | Honorable |
| | ) | Mitchell K. Shick, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court erred in granting defendant's motion to stay.

¶ 2     Plaintiff, Pekin Insurance Company (Pekin), filed a declaratory judgment action against its insured, defendants Kirby C. Johnson and his affiliates (Johnson), challenging its duty to defend Johnson in an underlying federal lawsuit. The circuit court granted Johnson's motion to stay and Pekin filed this interlocutory appeal, claiming the court abused its discretion. We reverse.

¶ 3                                    I. BACKGROUND

¶ 4     In February 2019, Johnson was sued in federal court by Minerva Sportswear, Inc. (hereinafter Minerva) for, generally speaking, infringing upon Minerva's exclusive contractual right with the Illinois High School Association (IHSA) to advertise and provide merchandise for the high school state finals track meet. Minerva alleged four grounds for relief: (1) a violation of

section 43(a) of the federal Lanham Act (the sale of goods using a false designation or false representation) (15 U.S.C. § 1125(a) (2012)); (2) a violation of the state Uniform Deceptive Trade Practices Act (passing off goods as those of another or misrepresenting that goods have sponsorship) (815 ILCS 510/2(a) (West 2018)); (3) a state violation of tortious interference with prospective economic advantage; and (4) unjust enrichment based on a tort theory. In other words, Minerva claimed Johnson advertised and produced t-shirts and other merchandise with "state finals" wording and sold this merchandise under the guise that it was authorized by IHSA and/or produced by Minerva. Pekin has been defending Johnson in the federal lawsuit under a reservation of rights.

¶ 5        In March 2019, Pekin filed a declaratory judgment action in the circuit court of Coles County seeking an order declaring that Pekin had no duty to defend Johnson in the federal lawsuit in light of the allegations in the federal complaint and the language of the applicable insurance policies. Pekin has insured Johnson under a commercial general liability policy since October 2014 with annual renewals. In its complaint, Pekin asserted it had no duty to defend Johnson because the federal complaint alleges conduct not covered under any Pekin insurance policy either based on the policy exclusions or the date of the alleged violations (Minerva alleges Johnson has engaged in the alleged conduct since May 2006). Pekin also sought reimbursement of costs spent on Johnson's defense under its reservation of rights.

¶ 6        In August 2019, Johnson filed a motion to stay in the declaratory judgment action until the federal lawsuit has been resolved. Johnson claimed the declaratory judgment action involved the same facts that will determine liability in the federal lawsuit, *i.e.*, whether Johnson disparaged Minerva's products and, if so, to what level of culpability. That is, the answer to these questions, according to Johnson, would determine whether Pekin has a duty to defend Johnson

based on the provisions of the insurance policy. And, Johnson claims, if those questions are answered in this declaratory judgment action before the federal lawsuit is resolved, the parties could be collaterally estopped from arguing otherwise.

¶ 7        In response to Johnson's motion to stay, Pekin claimed resolution on the issue of whether it had a duty to defend Johnson in the federal lawsuit did not require a finding on an issue of ultimate fact. Instead, according to Pekin, the circuit court need only look to the provisions of the insurance policy and the allegations in the federal complaint to see that coverage was not triggered. Or, in the alternative, if coverage seemed to be triggered by the allegations in the federal complaint, Pekin still had no duty to defend because of certain policy exclusions for intentional or knowing violations.

¶ 8        We review the allegations in the underlying complaint and the applicable terms of the insurance policy.

¶ 9                          A. Minerva's Federal Complaint

¶ 10        With regard to the allegations against Johnson, Minerva, in its first claim, alleged Johnson, in advertising its products, "intentional[ly], willful[ly], and [with] malicious intent" made "false or misleading descriptions of fact and false or misleading representations of fact, that misrepresent the nature, characteristics, and qualities of their goods" in violation of section 43(a) of the Lanham Act (15 U.S.C. § 1125(a) (2012)). In its second claim, Minerva alleged Johnson "willfully caused" irreparable injury to the public and Minerva by performing acts that constitute violations of the Uniform Deceptive Trade Practices Act (815 ILCS 510/2(a) (West 2018)). As noted, these counts allege intentional and knowing conduct.

¶ 11        In its third claim—the state tort claim, Minerva alleged Johnson "maliciously, fraudulently, willfully, and/or with gross negligence" interfered with Minerva's expected

- 3 -

economic advantage. In its fourth claim, Minerva alleged Johnson was unjustly enriched, and Minerva was impoverished from each sale of Johnson's state final merchandise.

¶ 12                                   B. Pekin's Insurance Policy

¶ 13        Pekin issued Johnson a one-year commercial liability policy, beginning October 20, 2014, and renewing annually thereafter. The policy covered Johnson for "bodily injury" and "property damage" caused by an "occurrence" within the "coverage territory." The policy also provided coverage for "personal and advertising injury liability." The policy stated:

"SECTION I – COVERAGES

* * *

COVERAGE B PERSONAL AND ADVERTISING INJURY

LIABILITY

1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or 'suit' that may result.

* * *

2. Exclusions

This insurance does not apply to:

- 4 -

a.  Knowing Violation of Rights of Another

'Personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'

b. Material Published With Knowledge of Falsity

'Personal and advertising injury' arising out of oral or written publication material, if done by or at the direction of the insured with knowledge of its falsity.

c. Material Published Prior to Policy Period

'Personal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

\* \* \*

g. Quality Or Performance of Goods—Failure to Conform to Statements

'Personal and advertising injury' arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement.'

\*\*\*

i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

'Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan.

\* \* \*

l. Unauthorized Use Of Another's Name or Product

'Personal and advertising injury' arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers."

\* \* \*

SECTION V - DEFINITIONS

\* \* \*

14.    'Personal and advertising injury' means injury including consequential 'bodily injury', arising out of one or more of the following offenses:

\* \* \*

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

\* \* \*

**g.** Infringing upon another's copyright, trade dress or slogan in your 'advertisement.' "

¶ 14    After considering the parties' respective arguments, the circuit court found, without specificity, "that several of the defenses to coverage raised by [Pekin] in these cases would require

the court to make a determination on an issue of ultimate fact in the underlying federal litigation that would bind the parties. Therefore, the motion[] to stay filed by [Johnson is] well taken and is granted[.]"

¶ 15 This appeal followed.

¶ 16 II. ANALYSIS

¶ 17 In this interlocutory appeal, Pekin argues the circuit court abused its discretion in granting Johnson's motion to stay because the declaratory-judgment action does not involve a determination of ultimate fact in the underlying case. Pekin insists the stay was entered in error because the "only issue is actually whether the complaint contains allegations which trigger a duty to defend."

¶ 18 Because a stay is injunctive in nature, this court has jurisdiction to review the stay order under Rule 307(a)(1) (eff. Feb. 26, 2010), which allows appeals from interlocutory orders "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." See *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 39 ("[T]he denial of a stay of trial court proceedings is treated as a denial of a request for a preliminary injunction and is appealable as a matter of right under Illinois Supreme Court Rule 307(a)(1).").

¶ 19 A. Duty to Defend

¶ 20 In Illinois, an insurer is obligated to defend an action against an insured where the claims against the insured are covered "actually or potentially" by the insured's policy. *Illinois Masonic Medical Center v. Turegum Insurance Co.*, 168 Ill. App. 3d 158, 162 (1988). An insurer's "duty to defend includes the right to control the defense so as to allow insurers to protect their financial interest in the outcome of the litigation and to minimize unwarranted liability claims." *Id.* at 163.

¶ 21    In determining whether an insurer has a duty to defend its insured, a court looks to the allegations in the underlying complaint and compares them to the relevant provisions of the insurance policy. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992). "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Id.* at 108. However, if it is clear from the face of the complaint that the allegations fail to state facts that bring the case within, or potentially within, the policy's coverage, an insurer may properly refuse to defend. *State Farm Fire & Casualty Co. v. Hatherly*, 250 Ill. App. 3d 333, 336 (1993) (quoting *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991)).

¶ 22    Ordinarily, in a declaratory judgment action on an insurer's duty to defend the insured, courts follow the eight-corners rule, comparing the four corners of the underlying complaint with the four corners of the insurance contract. *Country Mutual Insurance Co. v. Dahms*, 2016 IL App (1st) 141392, ¶ 37. "[A] court ordinarily looks first to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy," and "[i]f the facts alleged in the underlying complaint fall within, or *potentially* within, the policy's coverage, the insurer's duty to defend is triggered." (Emphasis in original and internal quotation marks omitted.) *Id.*

¶ 23    We say "ordinarily" because there is an exception to the eight-corners rule: in deciding whether the insurer has a contractual duty to defend the insured, the court may consider factual matters external to the underlying complaint and the insurance policy "as long as [these factual matters] do not bear upon issues in the underlying litigation" (*Millers Mutual Insurance Ass'n of Illinois v. Ainsworth Seed Co.*, 194 Ill. App. 3d 888, 889 (1989)) or "impact upon the underlying plaintiff's ability to pursue a theory of liability" (*Fremont Compensation Insurance*

*Co. v. Ace-Chicago Great Dane Corp.*, 304 Ill. App. 3d 734, 743 (1999)). Thus, the eight-corners rule bars extrinsic evidence only if, as a result of the proposed declaratory judgment, the plaintiff in the underlying lawsuit could be hampered by collateral estoppel. *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 197 (1976). Otherwise, extrinsic evidence is admissible on the question of the insurer's duty to defend the insured. "The only time such [extrinsic] evidence should not be permitted is when it tends to determine an issue crucial to the * * * underlying lawsuit" (*Pekin Insurance Co.* v. *Wilson*, 237 Ill. 2d 446, 461 (2010)), in which case the requested factual determination is regarded as "premature" (*Peppers*, 64 Ill. 2d at 197). (Internal quotation marks omitted.)

¶ 24        Pekin does not seek a factual determination on whether defendants did, in fact, market and sell State Finals merchandise to the detriment of Minerva, whether they interfered with Minerva's status as an exclusive vendor, or whether any of the other allegations in the underlying complaint are true. Instead, Pekin seeks only a determination that the allegations in Minerva's complaint do not trigger coverage under the Pekin policies, regardless of their truth or falsity. This determination requires only the application of the eight-corners rule—the comparison of the allegations in the underlying complaint with the language of the policy.

¶ 25        This is not the proceeding to decide whether Pekin is obligated to defend and indemnify Johnson. Nor is it the proceeding to determine whether Johnson committed the acts alleged in the federal lawsuit. Those issues are beyond the scope of this interlocutory appeal. We determine only whether the trial court's decision to grant the stay was appropriate.

¶ 26                                  B. Motion to Stay

¶ 27        We will not disturb a circuit court's decision on a motion to stay absent an abuse of discretion. *Pekin Insurance Co. v. Johnson-Downs Construction, Inc.*, 2017 IL App (3d)

160601, ¶ 10. "An abuse of discretion occurs if the court 'acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted.' " *Id.* (quoting *Cullinan v. Fehrenbacher*, 2012 IL App (3d) 120005, ¶ 10).

¶ 28        Applicable to the analysis of determining whether the stay was appropriately entered is the *Peppers* doctrine. See *Peppers*, 64 Ill. 2d at 197. Under the *Peppers* doctrine, it is inappropriate for a circuit court to decide an issue of ultimate fact critical to the underlying case. *Id.* The concern is that prematurely adjudicating such issues in the declaratory judgment action would result in collateral estoppel in the underlying litigation. *TIG Insurance Co. v. Canel*, 389 Ill. App. 3d 366, 375 (2009). If such a risk is present, the court should enter a stay until the pertinent issue in the underlying case has been adjudicated. This is so because the underlying tort case, as opposed to the declaratory-judgment case, is a better forum within which to determine the parameters of Johnson's conduct. See *State Farm Fire & Casualty Co. v. John*, 2017 IL App (2d) 170193, ¶ 23; *Peppers*, 64 Ill. 2d at 197.

¶ 29        As stated, Pekin claims it owes no duty to defend or indemnify Johnson because the federal complaint does not allege any conduct that would be covered under the policy. For example, Pekin claims, (1) there are no allegations of bodily injury, property damage, or "personal and advertising injury," (2) the complaint seeks damages for willful, intentional, and malicious conduct, and (3) Minerva alleges Johnson was "palming off" of merchandise—a claim not covered under the policy. Pekin has not asked the circuit court to make a determination as to the nature of Johnson's actual conduct. Thus far, Pekin has only asked the court to consider Minerva's *allegations* against Johnson and whether those allegations fall within the coverage of its policy.

¶ 30    Confronted with these issues in the declaratory judgment action, the circuit court will not be asked to determine an ultimate fact. Instead, the issue is whether Johnson is *alleged* to have caused Minerva's injuries, as opposed to whether Johnson, *in fact*, caused the injuries. To determine if Pekin has a duty to defend Johnson in the federal lawsuit, the court will compare the allegations in Minerva's complaint to the relevant policy language. That is, the court will determine if there are allegations that implicate the policy's coverage. This will not require the court to make a factual finding regarding the cause of Minerva's alleged injuries.

¶ 31    For example, per Johnson's arguments, the circuit court would only need to examine the underlying complaint to determine whether Minerva alleged disparagement and the insurance policy to determine whether coverage was provided. The court would not be required to determine whether Johnson's conduct actually constituted disparagement. With respect to intentional versus negligent conduct, again, Pekin is only arguing that the federal complaint *alleges* solely intentional conduct. Thus, the court's examination would be limited to the allegations of the federal complaint to determine what was being alleged by Minerva. It would not be required to evaluate Johnson's actions and determine whether they were, in fact, intentional. See *Johnson-Downs Construction*, 2017 IL App (3d) 160601, ¶ 13 (holding the circuit court could make a determination of whether the complaint contained any allegations that the insurer had a duty to defend by comparing the complaint to the language in the insurance policy without deciding liability).

¶ 32    Under these circumstances, a stay was unwarranted. Thus, we find the circuit court abused its discretion in granting the motion to stay. The declaratory judgment action can proceed to resolution prior to the conclusion of the underlying federal lawsuit.

¶ 33                                III. CONCLUSION

- 11 -

¶ 34        For the reasons stated, we reverse the circuit court's order granting Johnson's motion to stay.

¶ 35        Reversed.