**PETERSEN SAND AND GRAVEL, INC., an Illinois corporation, Plaintiff,**

v.

**MARYLAND CASUALTY COMPANY, a Maryland corporation, Defendant.**

No. 94 C 4836.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 13, 1995.

---

Stanley C. Nardoni, Robin Reed Lunn, John Stanley Vishneski, Keck, Mahin & Cate, Chicago, IL, for plaintiff.

Robert J. Bates, Jr., Darlene Marie Jarzyna, Kathleen Harvey Jensen, Bates, Meckler, Bulger & Tilson, Chicago, IL, for defendant.

### MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the court on plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the plaintiff's motion is granted.

### BACKGROUND

This is an insurance coverage case. The plaintiff, Petersen Sand and Gravel, Inc. ("PS & G"), brought this action against the defendant, Maryland Casualty Company ("Maryland"), alleging that Maryland breached its duties to defend and indemnify PS & G with respect to a suit brought against PS & G by the United States Environmental Protection Agency ("USEPA").

On June 29, 1990, PS & G received a letter from the USEPA alleging, the following:

[USEPA] in cooperation with the Illinois Environmental Protection Agency (IEPA) conducted response actions to address contamination at the Petersen Sand & Gravel Site near Libertyville, Illinois.... Prior to undertaking these response actions, USEPA determined that there was a release or threatened release of hazardous substances from the Petersen Sand & Gravel Site.

. . . .

During the response, USEPA's action at the Site included a remedial investigation. Response costs associated with this Site have been incurred by the USEPA. The approximate USEPA response costs identified up to April 30, 1990, for the above referenced Site are $829,781.33.

. . . .

Information available to USEPA indicates among other things that you are potentially responsible for the release, or threat of release of hazardous substances from the Site. Pursuant to the provisions of Section 107(a) of CERCLA, as amended, and based on evidence currently available to the Agency, USEPA believes that you may be liable for the payment of all costs incurred by USEPA in connection with the Site.

We hereby demand that you make restitution by payment of the amount in this letter plus interest, together with any sums hereafter expended by the Agency in connection with the Site.... If we do not receive a response from you ... the USEPA will assume that you have declined to reimburse the Fund for the Site expenditures, and pursuant to CERCLA, as amended, USEPA may pursue civil litigation against you.

See Complaint, Exhibit A, USEPA "PRP Letter." In January, 1991, PS & G sent a copy of the PRP letter to Maryland. On April 9, 1991 and April 18, 1991, Maryland denied coverage and refused to defend or indemnify PS & G with respect to the USEPA action. Maryland neither filed a declaratory judgment action to determine its defense obligations, nor did Maryland agree to defend PS & G under a reservation of rights.

On September 13, 1991, USEPA filed a complaint against PS & G, seeking to recover $833,711.00 in response costs expended at the Libertyville Site. The USEPA complaint alleged, in relevant part, that:

1. ... In this action the United States seeks to recover from defendant, Petersen Sand and Gravel, Inc., all costs it has incurred as a result of the release or threatened release of hazardous substances from a facility known as the Peterson Sand and Gravel Site ("the Site")....

7. During the 1960's Raymond A. Petersen allowed "worked out" portions of the gravel pit to be used for the disposal of hazardous substances. Similarly, when Petersen was formally incorporated in 1970, it continued to allow the disposal of hazardous substances at the Site to take place. These hazardous substances included cadmium, chromium, lead, mercury and vanadium.

. . . .

11. During excavation and grading activities for the recreational lake area, workers for the LCFPD [Lake County Forest Preserve District] conducted cleanup operations at the Site which were completed in December 1983.

12. On October 15, 1984, the Site was placed on the National Priorities List ("NPL"), 40 C.F.R. § 300 et seq., Appendix B, which is a national list of hazardous waste sites posing the greatest threat to the public health, welfare and the environment. The NPL is established pursuant to Section 105(a) of CERCLA, 42 U.S.C. § 9605(a).

13. An investigation of the nature and extent of remaining contamination, known as a remedial investigation ("RI") was conducted at the Site. The RI concluded that the remaining soils and waste materials at the Site present a minimal risk to human and aquatic life and minimal risk to the public health and the environment.

14. On September 14, 1988, USEPA issued a record of decision ("ROD"), which found that previous removal activities were adequate to protect human health and the environment. The ROD proposed that no further action be taken at the Site. The Site was deleted from the NPL pursuant to the appropriate public notice and comment period requirements.

15. USEPA has incurred costs of $833,711, through April 30, 1990, in connection with the response activities conducted at the Site.

See Complaint, Exhibit I. Maryland received a copy of the USEPA complaint in October, 1991 and again denied coverage and refused to defend or indemnify PS & G. Maryland never filed a declaratory judgment action to determine its defense obligations, nor did Maryland agree to defend PS & G under a reservation of rights.

The insurance policies issued by Maryland to PS & G were primary liability policies covering the period from July 9, 1984 to July 9, 1988. Each policy had a coverage clause for property damage and for personal injury. The Maryland Primary Policies defined "property damage" as:

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or

(2) loss of use of tangible property which has not been physically injured or

destroyed provided such loss of use is caused by an occurrence during the policy period.

An "occurrence" was defined as:

> an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

As specified in the policies, "personal injury" signified:

> ... [an] injury arising out of one or more of the following offenses, committed during the policy period:
>
> . . . .
>
> (2) wrongful entry or eviction, or other invasion of the right of private occupancy.

The plaintiff has moved for judgment on the pleadings, seeking a declaration that the defendant owed PS & G a duty both to defend it against the USEPA action and to indemnify PS & G for the amounts it was compelled to pay the United States as a result of the USEPA action. The plaintiff likewise seeks reimbursement from Maryland for all defense and settlement costs incurred as a result of the USEPA action.

## LEGAL STANDARD

After the close of pleadings, a defendant may, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, move for judgment on the pleadings to dispose of the case on the basis of the underlying substantive merits. The appropriate standard for a judgment on the pleadings is that applicable to summary judgment, except that the court may consider only the contents of the pleadings. *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir.1993). Thus, all well-pleaded allegations in the plaintiffs' pleadings are taken as true, but the facts and inferences to be drawn from those allegations are viewed in a light most favorable to the nonmovant. The granting of a Rule 12(c) motion will not be affirmed unless no genuine issues of material fact remain to be resolved and unless the movant is entitled to judgment as a matter of law.

## DISCUSSION

An insurer's duty to defend is much broader than its duty to indemnify. *Outboard Marine v. Liberty Mut. Ins.*, 154 Ill.2d 90, 180 Ill.Dec. 691, 707, 607 N.E.2d 1204, 1220 (1992). Generally, an insurer is required to defend whenever the loss is even arguably covered by the policy, *Western Casualty & Surety Co. v. Western World Ins. Co.*, 769 F.2d 381, 385 (7th Cir.1985), and the insurer may be obligated to defend against actions which are not in fact covered by the policy. *Tews Funeral Home v. Ohio Casualty Ins. Co.*, 832 F.2d 1037, 1042 (7th Cir. 1987). Under Illinois law, an insurer, when requested by its insured to defend against claims which in the insurer's opinion exceed its policy's coverage, has three available options. In such a case, the insurer may: (1) seek a declaratory judgment before trial of the underlying action; (2) defend the insured under a reservation of rights; or (3) refuse to defend. *Maneikis v. St. Paul Ins. Co.*, 655 F.2d 818, 821 (7th Cir.1981). An insurer who refuses either to defend or to seek a declaratory judgment does so at the insurer's peril that it might later be found to have breached its duty to defend. *Id.* Once an insurer violates its duty to defend, it is estopped from denying policy coverage in a subsequent lawsuit by the insured. *Id.* In the present case, Maryland chose neither to file a declaratory judgment action nor to defend PS & G under a reservation of rights. Thus, we must determine whether Maryland had a duty to defend PS & G against the USEPA action, and if by failing to do so, Maryland breached that duty.

To determine whether an insurer has a duty to defend, the underlying complaint against the insured must be examined. If the underlying complaint alleges facts "within or potentially within policy coverage, the insurer is obliged to defend its insured." *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 161 Ill.Dec. 280, 284, 578 N.E.2d 926, 930 (1991). An insurer may not justifiably refuse to defend an action against the insured unless "it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially

within, the policy's coverage. *Id.* The underlying complaint and the insurance policy are to be construed liberally in favor of the insured. *Id.*

■ Maryland argues that neither the PRP letter nor the USEPA complaint specifically allege that damage occurred during Maryland's policy period, i.e., July 9, 1984 to July 9, 1988. Such specificity, however, is not required. The PRP letter is silent as to when the contamination took place. The USEPA complaint, on the other hand, alleges that contamination had been discovered in 1977, 1980, and 1983 when clean-up efforts were completed. On October 15, 1984, after the completion of clean-up efforts, the Site was placed on the National Priorities List, and a remedial investigation was conducted by USEPA which was concluded on September 14, 1988. Given that the original clean-up efforts were completed prior to the policy period in 1983 and the Site was subsequently placed on the National Priorities List within the policy period, it appears that the contamination at least *potentially* occurred within the Maryland policy period. As such, Maryland was obligated to defend PS & G. Having failed to do so, Maryland breached its duty to defend PS & G against the USEPA complaint.

■ As indicated above, if an insurer is uncertain as to its duty to defend, it must either seek a declaratory judgment as to its obligations and rights or defend under a reservation of rights. *Insurance Co. of Pennsylvania v. Protective Ins. Co.,* 227 Ill. App.3d 360, 169 Ill.Dec. 630, 633, 592 N.E.2d 117, 120 (1992), *appeal denied,* 145 Ill.2d 634, 173 Ill.Dec. 5, 596 N.E.2d 629 (1992). "If the insurer does not elect one of these courses of action and refuses to defend an insured who ultimately incurs an adverse judgment, the insurer will be estopped from raising policy exclusions or noncoverage as a defense in any subsequent action brought to recover policy proceeds." *Id.* Having breached its duty to defend, Maryland is thus precluded from raising all defenses to coverage.

■ Maryland contends, however, that the doctrine of "known loss" applies to this case. By its nature, insurance is based upon contingent risks which may or may not transpire. If the insured knows or has reason to know when it purchases a policy that there exists a substantial probability that it will suffer or has already suffered a loss, the risk ceases to be contingent and becomes a probable or known loss. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.,* 154 Ill.2d 90, 180 Ill.Dec. 691, 697, 607 N.E.2d 1204, 1210 (1992). In such a case, the insurer has no duty to defend or indemnify the insured with respect to the known loss, unless the parties intended the known loss to be covered. *Id.* Thus, similar to the defense of late notice, the issue of known loss functions as a condition precedent to policy coverage. *See Davila v. Arlasky,* 857 F.Supp. 1258, 1264 (N.D.Ill.1994) (noting that notice requirement is condition precedent to insurance coverage under Illinois law). *Cf., International Envtl. Corp. v. National Union Fire Ins. Co.,* 860 F.Supp. 511, 517 (N.D.Ill. 1994) (treating known loss as a condition precedent to insurance coverage). As such, Maryland contends that known loss lies outside the estoppel rule.

Maryland strenuously argues that as a condition precedent to coverage, the presence of a known loss serves as a defense to the insurer's duty to defend. Because known loss is contemplated prior to the determination of breach, Maryland argues, estoppel does not apply to known loss. We disagree.

■ Under Illinois law, the estoppel rule has repeatedly been applied to the defense of late notice, which, like the defense of known loss, acts as a condition precedent to policy coverage. *See La Rotunda v. Royal Globe Ins. Co.,* 87 Ill.App.3d 446, 42 Ill.Dec. 219, 408 N.E.2d 928 (1980); *Maneikis,* 655 F.2d at 821; *Attorneys' Title Guaranty Fund v. Maryland Casualty Co.,* 1991 WL 171339, 1991 U.S.Dist. LEXIS 11,909 (N.D.Ill. August 23, 1991). In *La Rotunda,* for example, an insurer who failed to defend its insured was estopped from later litigating the late notice defense. In so determining, the court reasoned as follows:

[I]f the insurer thought that it had received notice too late to trigger its obligations, it should have litigated that fact in a declaratory judgment action or defended

under a reservation of rights as the insurer did in [citation]. The insurer, in its own words to Habada, "had an obvious recourse at law" if it felt that it had a valid case of non-coverage.

*La Rotunda,* 42 Ill.Dec. at 226, 408 N.E.2d at 935. The court in *La Rotunda* appropriately found that where allegations contained within an underlying complaint potentially come within the coverage of the policy, an insurer may not merely remain idle at no risk to the insurer. We consider this to be the proper result.

If the insurer believes that it has a valid case of non-coverage, the insurer has several options available. If the insurer wilfully forgoes these options and an underlying complaint against its insured contains allegations potentially within the coverage of the policy, the insurer will be estopped from asserting defenses to noncoverage, including the defense of known loss. To decide otherwise would be tantamount to granting the insurance companies free reign to deny coverage where potential policy coverage exists, while completely undermining the equitable considerations behind the Illinois estoppel rule.

██ Maryland could have filed a prompt declaratory judgment action in an effort to establish its known loss defense. Maryland could have similarly preserved the defense by defending PS & G under a reservation of rights. Having failed to pursue either available recourse, Maryland is now estopped from litigating any defenses to coverage, including the known loss defense. Because we find that the underlying USEPA complaint potentially comes within the policy coverage, Maryland had a duty to defend PS & G in that litigation. In that Maryland breached that duty to PS & G's detriment, Maryland has a duty to indemnify PS & G for any losses incurred. The plaintiff's motion for judgment on the pleadings is granted.

### CONCLUSION

For the reasons set forth above, the plaintiff's motion for judgment on the pleadings is granted.