**ILLINOIS TOOL WORKS INC., et al., Plaintiff,**

v.

**THE HOME INDEMNITY CO., et al., Defendants.**

No. 97 C 2057.

United States District Court,
N.D. Illinois,
Eastern Division.

March 9, 1998.

Robin Reed Lunn, John Stanley Vishneski, Neal, Gerber & Eisenberg, Paul R. Walker–Bright, Keck, Mahin & Cate, Chicago, IL, for Illinois Tool Works, Inc.

James F. Martin, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for Home Indemnity Company, Home Insurance Company.

John J. Piegore, Kiesler & Berman, Jacqueline M Satherlie, Kiesler & Berman, Chicago, IL, Donald A Lane, Droder & Miller Co., L.P.A., Cincinnati, OH, for American Alliance Ins. Co.

Donald A. Lane, Droder & Miller Co., L.P.A., Cincinnati, OH, for Great American Ins. Co.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiff, Illinois Tool Works Inc. ("ITW"), filed this insurance coverage action against Defendant, American Alliance Insurance Co. ("American"), alleging that American breached its duty to defend and indemnify its insureds RBK Furniture, Inc. ("RBK") and Robert B. Kaplan ("Kaplan").[1] ITW now moves for judgment on the pleadings pursu-ant to Fed.R.Civ.P. 12(c). For the reasons set forth below, the motion is granted.

### BACKGROUND

The present litigation originates as a result of an underlying lawsuit filed on December 7, 1994 by ITW against RBK in the United States District Court for the Northern District of Illinois. The suit, *Illinois Tool Works v. RBK Furniture,* No. 94 C 7301, alleged that hazardous waste products deposited at the RBK property contaminated the soil and groundwater underlying ITW's adjacent property. ITW's suit requested damages and other relief from RBK pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, 9607 *et seq.* ("CERCLA"). The suit also sought damages and other relief from RBK for trespass and nuisance as a result of the contamination from the RBK property entering the ITW property. On January 20, 1995, ITW amended its Complaint adding Kaplan, the owner of the property, as a defendant.

On January 20, 1995, counsel for RBK notified American of ITW's original Complaint and requested that American defend RBK against the Complaint and indemnify it for any liability pursuant the terms of American's insurance policy with RBK. American responded to RBK's letter on January 23, 1995, denying any obligation to defend or indemnify RBK under the provisions of American's policy.

On February 20, 1995, counsel for RBK and Kaplan notified American of ITW's Amended Complaint and again requested that American defend RBK and Kaplan against the Amended Complaint and indemnify them for any liability under American's insurance policy with RBK. One week later, on February 27, 1995, counsel for RBK and Kaplan wrote another letter to American and specifically requested a defense against ITW's Amended Complaint and indemnification under the "personal injury" provisions of American's policy, citing as authority the

---

1. ITW is the assignee of the policyholders RBK and Kaplan. The Home Indemnity Co. and the Home Insurance Co. were originally co-defen-dants with American Alliance but have since been dismissed.

Seventh Circuit case *Pipefitters Welfare Educational Fund v. Westchester Fire*, 976 F.2d 1037 (7th Cir.1992).

On February 28, 1995, American responded to RBK's February 20, 1997 letter and once again denied that it had any duty to defend or indemnify RBK or Kaplan under the provisions of its policy. This letter was followed up by another letter from American to RBK and Kaplan on March 6, 1995 specifically denying any obligation to defend or indemnify RBK or Kaplan under the "personal injury" provisions in American's policy.

There was apparently no further correspondence between the parties until August 27, 1996, when counsel for RBK and Kaplan wrote to American advising it that ITW, RBK and Kaplan had reached a settlement in principle of ITW's lawsuit, and enclosed a copy of the proposed settlement agreement. The letter also advised American that RBK and Kaplan intended to enter into the settlement within the next week unless American notified RBK and Kaplan that it had reconsidered its decision not to defend or indemnify them. American did not reconsider. Consequently, on October 21, 1996, the district court dismissed the underlying lawsuit with prejudice pursuant to the parties' stipulation and agreement following their settlement.

ITW, as assignee of RBK and Kaplan, filed the present insurance coverage action against American on March 25, 1997. The Complaint alleges that American breached its duty to defend and indemnify RBK and Kaplan against the underlying lawsuit. Specifically, ITW points to a commercial general liability policy ("CGLP") issued to RBK by American covering the period April 15, 1988 to April 15, 1989, no. PAC 071629400. The American policy has a coverage clause for "personal injury" liability that states, in pertinent part, as follows:

> We will pay those sums that the insured becomes legally obligated to pay as dam-

ages because of "personal injury" or "advertising injury" to which the insurance applies .... We will have the right and duty to defend any "suit" seeking those damages.

The policy defines "personal injury" as:

> "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:
>
> \*   \*   \*   \*   \*   \*
>
> c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

ITW maintains that under Illinois law, American was, at the very least, obligated to defend RBK and Kaplan against the underlying lawsuit under the "personal injury" provision of the policy. ITW also contends that because American breached its duty to defend against the underlying lawsuit, it is estopped from contesting coverage in a subsequent lawsuit by the insured or the insured's assignee. Thus, ITW requests that this Court grant it judgment on the pleadings on the issue of liability for American's breach of its duty to defend and indemnify RBK and Kaplan.[2]

### DISCUSSION

#### I. Standard For Judgment On The Pleadings

A Rule 12(c) motion for judgment on the pleadings is "designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice." 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1367 (1990); *see also, Zucker v. American Greetings Corp.*, 1995 WL 398933, at *1 (N.D.Ill. June 30, 1995); *Alexander v. City of Chicago,*

---

**2.** ITW was initially granted leave of Court to file its motion for judgment on the pleadings. ITW apparently took this to mean it could file whatever it wanted and proceeded to file two motions— one for judgment on the pleadings and one for summary judgment. While the Court continues to believe that these motions could have and should have been consolidated in one summary judgment motion, ITW chose instead to withdraw its motion for summary judgment and await this Court's decision on its motion for judgment on the pleadings. Accordingly, this Court's decision is limited to the issues and arguments properly before it on ITW's motion for judgment on the pleadings.

994 F.2d 333, 336 (7th Cir.1993). Thus, all well-pleaded allegations in the plaintiff's pleadings are taken as true, but the facts and inferences to be drawn from those allegations are viewed in the light most favorable to the non movant. *Petersen Sand and Gravel, Inc. v. Maryland Cas. Co.,* 881 F.Supp. 309, 313 (N.D.Ill.1995). A Rule 12(c) motion will not be granted unless no genuine issues of fact remain to be resolved and unless the movant is entitled to judgment as a matter of law.[3] *Id.*

## II. *Insurer's Duty to Defend*

The chief question before this Court is whether American had a duty to defend RBK and Kaplan against ITW's Amended Complaint. The Illinois Supreme Court recently detailed the well-known standards by which a court determines whether an insurer is obligated to defend its insured. *American States Ins. Co. v. Koloms,* 177 Ill.2d 473, 227 Ill.Dec. 149, 687 N.E.2d 72, 75 (1997).

> Ordinarily, a Court looks to the allegations in the underlying complaint and compares these allegations to the relevant provisions of the insurance policy. If the facts alleged in the complaint fall within, or potentially within, the language of the policy, the insurer's duty to defend arises. A Court's primary objective in construing the language of the policy is to ascertain and give effect to the intentions of the parties as expressed in their agreement. If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning. Conversely, if the terms of the policy are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the policy. In addition, provisions that limit or exclude coverage will be interpreted liberally in favor of the insured and against the insurer.

*Id.* (citations omitted). Thus, an insurer is generally required defend "whenever the loss is even arguably covered by the policy, and the insurer may be obligated to defend

against actions which are not in fact covered by the policy." *Petersen,* 881 F.Supp. at 313 (citing *Western Cas. & Surety Co. v. Western World Ins. Co.,* 769 F.2d 381, 385 (7th Cir. 1985); *Tews Funeral Home v.. Ohio Cas. Ins. Co.,* 832 F.2d 1037, 1042 (7th Cir.1987)).

### A. *Underlying Lawsuit Covered By the Policy*

ITW contends that the trespass and nuisance counts alleged in the underlying lawsuit clearly come within the plain meaning of the "personal injury" provision in American's policy. ITW points specifically to the policy's definition of "personal injury," which includes "wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies." ITW maintains that the term "wrongful entry" has been interpreted under similar circumstances to include "a trespassory invasion by pollutants migrating from one property to another." (ITW Mem. at 11.)

American responds that the environmental damage alleged in the underlying lawsuit does not fall within the "personal injury" provision of the policy. Specifically, American contends that the personal injury section of the policy is limited to coverage for wrongful entry torts that injure "natural persons." Hence, allegations in the underlying complaint of property damage caused by pollution cannot be characterized as "wrongful entry" because "the insured is not threatened with liability for interfering with property owners' or occupants' rights of private occupancy." (American Mem. at 3.)

At first glance, ITW's reading of the personal injury provision appears strained. ITW is, however, on solid legal ground in its interpretation American's personal injury policy provision. In *Millers Mutual Ins. Assoc. of Illinois v. Graham Oil Co.,* 282 Ill.App.3d 129, 218 Ill.Dec. 60, 668 N.E.2d 223 (2d Dist.1996), the Illinois Appellate Court recently interpreted a similarly worded personal injury provision. The question presented to the court was whether claims for trespass and nuisance resulting from en-

---

3. Under Illinois law, which the parties agree is governing here, the construction of an insurance policy's provisions is a question of law. *Lap-*

*ham–Hickey Steel Corp. v. Protection Mut. Ins. Co.,* 166 Ill.2d 520, 529, 211 Ill.Dec. 459, 655 N.E.2d 842 (1995).

vironmental contamination were properly construed under the policy's "Bodily Injury and Property Damage Liability" section—in which case they would have been barred by a "pollution exclusion"—or whether they should be interpreted under the policy's "Personal and Advertising Injury Liability Section"—which contained no such "pollution· exclusion." The *Millers Mutual* court held that the personal injury section of the policy would include "damage sustained by those personal rights incidental to the ownership of property" arising from the discharge of pollution. 282 Ill.App.3d at 137, 218 Ill.Dec. 60, 668 N.E.2d at 229. Thus, claims for trespass arising out of environmental contamination could be covered by the personal injury section of a similarly worded insurance policy.

The Illinois Appellate Court's decision in *Millers Mutual* is consistent with several earlier decisions by the Seventh Circuit interpreting analogous "personal injury" provisions. *See Pipefitters Welfare Educational Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1041 (7th Cir.1992)(applying Illinois and Missouri law); *Scottish Guarantee Ins. Co. v. Dwyer*, 19 F.3d 307, 311 (7th Cir.1994)(applying Wisconsin law). In both *Pipefitters* and *Scottish Guarantee,* the Seventh Circuit concluded that the term "wrongful entry," as used in the "personal injury" provisions of the policies at issue, encompassed state law claims of trespass arising from environmental contamination. In *Scottish Guarantee,* the Court reasoned that "[a]t the very least, the policy's use of the term is ambiguous, and we must resolve any ambiguity in favor of coverage." *Id.* at 312.

American distinguishes *Pipefitters* and *Scottish Guarantee* by arguing that the Seventh Circuit never directly addressed the question of whether the term "personal injury" should be limited to torts that injure natural persons, rather than those that cause economic harm to a business.[4] This Court is unable to find anything in the language of American's policy or Illinois law that would support the narrow distinction advanced by American. The policy language does not expressly limit "personal injury" to "natural persons." Moreover, the offenses constituting "personal injury" include "wrongful entry into ... a room, dwelling or premises that the person occupies." The court in *Millers Mutual* explained that "Illinois cases referring to 'wrongful entry' do not define it as a cause of action, but merely use it to characterize the unlawful nature of the trespasses therein considered." 282 Ill.App.3d at 140, 218 Ill.Dec. 60, 668 N.E.2d at 231. This Court concludes that, at best, the policy language is ambiguous and must be construed in favor of the insured. Accordingly, the Court finds that under Illinois law, the underlying complaint alleges facts that are at least potentially within the "personal injury" provision of American's policy.

### B. *Allegations of Personal Injury Within the Policy Period*

■ American contends that even if the environmental contamination alleged in the underlying lawsuit is properly characterized as a personal injury under its policy, American does not have a duty to defend because the underlying complaints do not properly allege commission of an offense causing personal injury within the policy period and arising out of the insured's business. (American Mem. at 7.) Thus, American argues that ITW has failed to meet its burden of proving coverage under the policy.

Bearing in mind the broad duty to defend, the Court finds American's argument to be untenable in the present case. American's argument simply presents the question of whether the underlying complaints sufficiently allege facts that are "within or potentially within policy coverage." *Travelers Ins. Companies v. Penda Corp.*, 974 F.2d 823, 827 (7th Cir.1992). The ITW complaints were

---

**4.** American also argues that this case can be distinguished from the Seventh Circuit and Illinois authority because the underlying action does not allege any damages which could be "fairly characterized" as an impairment of the right of private occupancy. The Court does not agree and finds that the underlying complaint sufficiently alleged that "the actions and omissions of RBK and Kaplan caused the unauthorized invasion and contamination of ITW's exclusive possession of said property" and "[a]s a result of the contamination and pollution of the ITW property the use and value of the ITW property for current and future economic purposes has substantially decreased ...." (Ex. E to Compl. at ¶¶ 21, 22.)

filed in late 1994 and early 1995. Although the complaints do not specify the dates during which the contamination took place, it is not far-fetched to imagine that the contamination occurred during the American policy period—from 4/15/88 to 4/15/89. Illinois courts have adopted a "commonsense interpretation" when evaluating the pleadings to avoid leaving the insured "at the mercy of its adversary's pleading skills." *Id.* Under a commonsense interpretation, this occurrence was "potentially" within the policy period when American was asked to defend these actions.

### C. Conflict of Interest

■ Finally, American argues that even if the underlying complaints fell within the terms of the insurance policy, American could not have defended RBK and Kaplan because it faced a genuine conflict of interest. Specifically, American maintains that if it had retained counsel, that counsel would have been in a position where he could have influenced the presentation of evidence so as to result in a finding of liability against RBK and Kaplan on the CERCLA claim—which alleged damage that was clearly excluded from the policy. In other words, American's retained counsel might care more about defending the trespass and nuisance claims—for which American would be on the hook—than he or she would about defending the CERCLA claim—for which only RBK and Kaplan would be on the hook.

■ Under well-settled Illinois law, only three options are available to a liability insurer requested to defend an insured against claims which the insured believes exceed policy coverage. The insurer can (1) seek a declaratory judgment regarding its obligations before or pending trial of the underlying action, (2) defend the insured under a reservation of rights, or (3) refuse either to defend or seek a declaratory judgment at the insurer's peril that it might later be found to

have breached its duty to defend. *Maneikis v. St. Paul Ins. Co. of Illinois,* 655 F.2d 818, 821 (7th Cir.1981). Once an insurer violates its duty to defend, it is estopped to deny policy coverage in a subsequent lawsuit by the insured or the insured's assignee. *Id.* (citations omitted).

■ In *Thornton v. Paul,* 74 Ill.2d 132, 23 Ill.Dec. 541, 384 N.E.2d 335 (1978), the Illinois Supreme Court articulated a "limited exception" to the general rule of estoppel for those rare instances where representation would create a direct and serious conflict of interest between the insured and the insurer.[5] The insured in *Thornton* was sued for both intentional battery and negligence arising out of the same act. Although the court reasoned that the insured's interest in the tort action would be to avoid liability altogether, the insurer's interest "would not necessarily lie in a finding of not guilty, but would have been just as well served by a finding that the defendant was guilty by virtue of having committed a battery upon the plaintiff." 74 Ill.2d at 152, 23 Ill.Dec. 541, 384 N.E.2d at 343. Because the insured clearly could not be liable under both theories of recovery, the court was concerned that the insurer and the insured were adversaries on a critical issue that would necessarily be decided one way or another if liability were imposed. After reviewing the facts in *Thornton,* the Seventh Circuit observed that an insurer may not represent its insured " 'when the insurer's and the insured's interests in the conduct of the tort action are in serious conflict.' " *Maneikis,* 655 F.2d at 825 (citations omitted); *see also Littlefield v. McGuffey,* 979 F.2d 101, 105–06 (7th Cir. 1992) (reaffirming the holding of *Maneikis* in light of subsequent Illinois authority).

■ The conflict of interest claimed by American appears illusory at best. This Court is unable to find any conflict on a critical issue of liability in this case. The

---

5. ITW correctly points out that when a conflict of interest develops between an insurer and an insured, the insurer must decline to defend and, "[i]nstead of participating in the defense itself, ... must pay the costs of independent counsel for the insured." *Murphy v. Urso,* 88 Ill.2d 444, 452, 58 Ill.Dec. 828, 430 N.E.2d 1079, 1082

(1981). Thus, the Court is unclear how this conflict argument, even if it were successful, would benefit American. Either way, American would appear to be stuck underwriting the costs of whatever defense RBK/Kaplan chose to make. *Id.* at 454, 58 Ill.Dec. 828, 430 N.E.2d at 1084.

bottom line inquiry is whether materials from the RBK/Kaplan site contaminated the ITW site. The CERCLA claims and the trespass and nuisance claims are neither inconsistent nor mutually exclusive. The only conflict that the Court can find is in the fact that American does not want to provide coverage to RBK/Kaplan. But, "[a]n insurer's interest in negating policy coverage, without more, is not a serious enough conflict to require it to give up its right to defend the insured." *Nandorf, Inc. v. CNA Ins. Cos.,* 134 Ill.App.3d 134, 88 Ill.Dec. 968, 479 N.E.2d 988, 992 (1st Dist.1985).

Accordingly, this Court concludes that American had a duty to defend the underlying action against RBK/Kaplan and was not precluded from doing so by a conflict of·interest. Because American chose not to seek a declaratory judgment or defend under a reservation of rights, it is precluded from disputing questions of coverage under the doctrine of equitable estoppel.[6] "To decide otherwise would be tantamount to granting the insurance companies free reign to deny coverage where potential policy coverage exists, while completely undermining the equitable considerations behind the Illinois estoppel rule." *Petersen,* 881 F.Supp. at 315.

### CONCLUSION

For the reasons stated above, ITW's motion for judgment on the pleadings is granted. American is found liable for the attorneys' fees RBK and Kaplan incurred defending themselves against the ITW lawsuit, and for the settlement entered into by RBK and Kaplan.[7]

---

**6.** ITW requests that American be penalized pursuant to Section 155 of the Illinois Insurance Code for its "vexatious and unreasonable delay" in resolving a claim. 215 ILCS 5/155. Based on the pleadings, the Court believes that sanctions pursuant to Section 155 are unwarranted.

**7.** The Court recognizes that there may be additional questions left to be resolved with respect to the propriety or authenticity of the settlement agreement and will address those issues when they are properly presented.