ILLINOIS TOOL WORKS
INC., et al., Plaintiff,

v.

THE HOME INDEMNITY COMPANY,
et al., Defendants.

No. 97 C 2057.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 28, 1998.

---

Robin Reed Lunn, John Stanley Vishneski, Neal, Gerber & Eisenberg, Chicago, IL, Paul R. Walker–Bright, Keck, Mahin & Cate, Chicago, IL, for Plaintiff.

James F. Martin, Skadden, Arps, Slate & Meagher & Flom, Chicago, IL, John J. Piegore, Kiesler & Berman, Chicago, IL, Jasqueline M. Satherlie, Kiesler & Berman, Chicago, Il, Donald A. Lane, Droder & Miller Co., L.P.A., Cincinnati, OH, for Defendants.

### MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiff, Illinois Tool Works Inc. ("ITW"), filed this insurance coverage action against Defendant, American Alliance Insurance Co. ("American"), alleging that American breached its duty to defend and indemnify its insureds, RBK Furniture, Inc. ("RBK") and Robert B. Kaplan ("Kaplan").[1] ITW now moves for summary judgment in its favor and against American for damages in the

---

1. ITW is the assignee of the policyholders RBK and Kaplan. The Home Indemnity Co. and the Home Insurance Co. were originally co-defendants with American but have since been dismissed.

amount of $1,952,688.37. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

ITW's present motion for summary judgment signals the commencement of Round Two of the parties' ongoing insurance coverage dispute. Round One—considering ITW's motion for judgment on the pleadings—has already been decided in ITW's favor by this Court in its February 28, 1998 Memorandum Opinion and Order. *Illinois Tool Works, Inc. v. Home Indem. Co.*, 998 F.Supp. 868 (N.D.Ill.1998). The casual reader is referred to that opinion for a more comprehensive discussion of the relevant background to this insurance coverage dispute.

In brief, this action arises out of a lawsuit filed on December 7, 1994 by ITW against RBK in the United States District Court for the Northern District of Illinois. The suit, *Illinois Tool Works v. RBK Furniture*, No. 94 C 7301, alleged that hazardous waste products deposited at the RBK property contaminated the soil and groundwater underlying ITW's adjacent property. ITW's suit requested damages and other relief from RBK pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, 9607 *et seq.* ("CERCLA"). The suit also sought damages and other relief from RBK for trespass and nuisance as a result of the contamination from the RBK property entering the ITW property. On January 20, 1995, ITW amended its Complaint adding Kaplan, the owner of the property, as a defendant.

Counsel for RBK and Kaplan requested—on several occasions—that American defend them against ITW's Complaint and indemnify them for any liability pursuant to the terms of American's insurance policy. American, however, denied that it had any duty to defend or indemnify RBK or Kaplan under the provisions of its policy.

On September 20, 1996, RBK and Kaplan entered into a settlement agreement and mutual release with ITW in which RBK and Kaplan assigned their causes of action against Home and American under the policies to ITW. As assignee of RBK and Kaplan, ITW filed an insurance coverage action against American on March 25, 1997. The Complaint alleged that American breached its duty to defend and indemnify RBK and Kaplan against ITW's lawsuit under the personal injury provisions of American's policy. Subsequently, ITW moved for judgment on the pleadings requesting that this Court determine the issue of liability for American's breach of its duty to defend and indemnify RBK and Kaplan.

On February 28, 1998, this Court concluded that American had breached its duty to defend RBK and Kaplan against ITW's lawsuit. *Illinois Tool Works*, 998 F.Supp. at 874. As a result of its breach, the Court found that American was "liable for the attorneys' fees RBK and Kaplan incurred defending themselves against the ITW lawsuit and for the settlement entered into by RBK and Kaplan." *Id.* However, the Court did not enter a judgment for the attorneys' fees or the settlement amount because it "recognize[d] that there may be additional questions left to be resolved with respect to the propriety or authenticity of the settlement agreement." *Id.* at 874 n. 7. Those questions are the subject of ITW's current motion for summary judgment.

In particular, the issues before the Court concern: (1) the propriety of the September 20, 1996 settlement agreement entered into between ITW and RBK/Kaplan; (2) the amount, if any, owed by American—as the insurer for RBK/Kaplan—under the settlement agreement; (3) the amount, if any, of attorneys' fees owed by American—as the insurer for RBK/Kaplan—by virtue of ITW's CERCLA lawsuit; and (4) the amount, if any, of prejudgment interest owed by American—as the insurer for RBK/Kaplan—under the settlement agreement.

## DISCUSSION

### I. Standards for Summary Judgment

Summary judgment is appropriate where the pleadings, answers to interrogatories, affidavits, and other materials show that there exists "no genuine issue as to any material fact" and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Only genuine disputes over "material

facts" can prevent a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Material facts" are those that might affect the outcome of the suit under governing law. *Id.* A "genuine issue" exists only if there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505. When considering a motion for summary judgment, a court must view the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the non-movant. *Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991).

## II. Settlement Was Entered in Reasonable Anticipation of Liability

■■■ In order to recover the full amount of the settlement from American, under Illinois law, ITW must demonstrate that the settlement was made in reasonable anticipation of liability and the settled amount was reasonable. *WestAmerica Mortgage Co. v. Tri–County Reports, Inc.,* 670 F.Supp. 819, 821 (N.D.Ill.1987); *United States Gypsum Co. v. Admiral Ins. Co.,* 268 Ill.App.3d 598, 625, 205 Ill.Dec. 619, 643 N.E.2d 1226, 1244 (1st Dist.1994). This rule originated from the concern that a settlement may be entered into in order to obtain insurance coverage for an otherwise uninsurable claim. *United States Gypsum Co.,* 268 Ill.App.3d at 625, 205 Ill.Dec. 619, 643 N.E.2d at 1244. There is an additional concern that insureds would be deterred from entering into a settlement agreement if they had to offer full proof of liability when proof has not yet been established in the underlying action. *Id.* Thus, if an insured settles an underlying claim prior to verdict, the insured does not need to establish actual liability to the party with whom it settled " 'so long as a potential liability on the facts known to the [insured is] shown to exist....' " *Id.* (*quoting Luria Bros. & Co. v. Alliance Assurance Co.,* 780 F.2d 1082, 1091 (2d Cir.1986)). The insured also does not need to prove that it is more likely than not liable to the party with whom it settled. *WestAmerica v. Tri–County,* 670 F.Supp. at 821. Instead, the insured simply needs to prove that "by settling, he was responding to a reasonable anticipation of personal liability rather than acting as a mere volunteer." *Id.*

(*quoting St. Paul Fire and Marine Ins. Co. v. Michelin Tire Corp.,* 12 Ill.App.3d 165, 169, 298 N.E.2d 289, 292 (1st Dist.1973)).

■ In the instant case, ITW has established to this Court's satisfaction that RBK and Kaplan entered into the settlement agreement with reasonable anticipation of liability for the contamination of ITW's soil and groundwater. ITW alleged that waste products from the solid and hazardous wastes deposited at the RBK property entered and contaminated the ITW property. (ITW 12(M) Statement at ¶ 12.) ITW's allegations were corroborated by an environmental investigation performed by Environmental Science & Engineering, Inc. ("ESE") for RBK and Kaplan during the pendency of the ITW suit. The ESE investigation concluded that the source of the contamination was located within the RBK property which was owned by Kaplan. (ITW 12(M) Statement at ¶ 12.) In addition, ITW alleges that the *Nutrasweet Co. v. X–L Engineering Corp.,* 933 F.Supp. 1409 (N.D.Ill.1996) decision, rendered on August 7, 1996, twenty days before RBK and Kaplan wrote to American that it intended to settle with ITW, made it reasonable for RBK and Kaplan to anticipate liability. In *Nutrasweet,* the plaintiffs, a company which formerly owned an environmentally contaminated property and the company's parent, prevailed on claims of private nuisance, trespass and negligence against the corporate owner of the neighboring property under similar circumstances. Thus, ITW asserts that it was reasonable for RBK and Kaplan to believe that they too would be liable for the contamination of ITW's property. As a result, it was also reasonable for them to enter into a settlement agreement with ITW.

In defense, American attempts to set forth evidence demonstrating that RBK and Kaplan were not liable for the contamination of ITW's property. First, American argues that ESE's various investigations, the ones upon which ITW relied, were incomplete and thus, flawed. (American Resp. at 12–13.) American also contends that Kaplan and RBK's "innocent landowner defense" was strong and could have precluded liability. (*Id.* at 14.) Finally, American argues that

the *Nutrasweet* decision was inapposite to the present case because in *Nutrasweet* there was clear evidence that the defendants caused the contamination while in this case, there is no such evidence. (American Resp. at 14–15.) Thus, for these various reasons, American believes that it was unreasonable for RBK and Kaplan to anticipate liability for the contamination of ITW's property.

Although American sets forth several viable arguments for why RBK and Kaplan might ultimately not have been found liable for the contamination, these arguments fail to raise any significant doubts that the parties entered into the settlement with reasonable anticipation of liability. As the court explained in *WestAmerica v. Tri–County Reports*, the insured is not required to prove liability. 670 F.Supp. at 821. Instead, the insured merely has to prove that it reasonably anticipated liability. *Id.* The fact that American has evidence demonstrating that RBK/Kaplan may not have caused the contamination of ITW's property does not create an issue of material fact. It only shows that RBK/Kaplan may have been able to defend itself in the suit if it was forced to go to trial. Despite American's evidence, this Court must still conclude that RBK and Kaplan "reasonably anticipated" that they would be liable for the contamination.

### III. *Reasonableness of the Settlement Amount*

The next issue to be considered is whether the amount of the settlement between RBK/Kaplan and ITW—$2.0 million—was reasonable. "The reasonableness of the amounts paid in settlement is a matter bearing solely upon the issue of damages." *WestAmerica v. Tri–County*, 670 F.Supp. at 822. In the present case, ITW asserts that the $2.0 million settlement amount is reasonable considering the potential damages against RBK and Kaplan. ITW points out that as of June 1994, ESE had estimated the investigation and remediation costs to be between $2,564,574 and $4,496,492. (ITW 12(M) Statement at ¶ 17.) Also, ITW points out that as of the date its motion for summary judgment was filed, ITW had expended in excess of $2,150,000.000. (*Id.* at ¶ 18.) Thus, ITW considers the $2.0 million settlement amount to be reasonable.

Initially, American disputes that the $2.0 million settlement amount is reasonable. Nevertheless, American argues that even if the settlement amount is "reasonable," it should not be forced to bear the full $2.0 million because its policy limit for "Personal and Advertising Injuries" is only $1.0 million. Thus, American insists that it is precluded from paying for any settlement over $1.0 million. (American Resp. at 2–3.) For obvious reasons, before the Court determines whether the $2.0 million settlement amount is "reasonable," it will first consider whether American is required to pay the full settlement amount—reasonable or not.

### A. *American's Policy Limit*

█] Illinois law generally holds "[t]he mere failure to defend does not, in the absence of bad faith, render the insurer liable for that amount of the judgment [or settlement] in excess of the policy limits." *Reis v. Aetna Cas. & Sur. Co. of Illinois*, 69 Ill. App.3d 777, 790, 25 Ill.Dec. 824, 387 N.E.2d 700, 710 (1st Dist.1978) (citations omitted); *see also Green v. J.C. Penney Auto Ins. Co., Inc.*, 806 F.2d 759, 762 (7th Cir.1986). In *Conway v. Country Cas. Ins. Co.*, 92 Ill.2d 388, 65 Ill.Dec. 934, 442 N.E.2d 245 (1982), the Illinois Supreme Court explained:

> [w]hile the wrongful refusal of the insurer to conduct the defense of an action based upon a claim within the coverage of the policy makes it liable, the insurer is not exposed to a greater liability to the insured than the limit of the amount stated in the policy.

92 Ill.2d at 397, 65 Ill.Dec. 934, 442 N.E.2d at 249.

As mentioned above, there is an exception to this general rule if the insurer breaches its duty to defend in bad faith. *See Green*, 806 F.2d at 762. However, this Court has previously refused to penalize American pursuant to Section 155 of the Illinois Insurance Code for "vexatious and unreasonable delay" in resolving RBK/Kaplan's claim. *Illinois Tool Works*, 998 F.Supp. at 874 n. 6. Upon further review, this Court also remains unconvinced that American acted in bad faith when it breached its duty to defend. Moreover, the Court does not find any evidence to indicate

that "but for [American's] wrongful refusal to defend [RBK/Kaplan], the case could have been settled for an amount within [American's] policy limits." *Green*, 806 F.2d at 762–63. Finally, ITW's suggestion that RBK/Kaplan settled for a *higher* amount than they would have if American had not breached its duty to defend is counter-intuitive. Surely, RBK/Kaplan would have been motivated to settle for less based on their belief that they might be forced to foot the entire bill.[2]

ITW does not dispute that American's policy limit for "Personal and Advertising Injuries" is only $1.0 million. Nor does ITW direct this Court to any case law which would call into question the Illinois rule limiting an insurer's liability to the amount stated in its policy. Instead, ITW asserts that American somehow "waived" its policy limit argument by not raising it in response to ITW's previous motion for judgment on the pleadings. (ITW Reply at 2.) According to ITW, "this Court has already determined that American's breach of its duty to defend rendered it liable to ITW for the entire settlement entered into by RBK, Kaplan and ITW." (*Id.*) Consequently, the only way that American could raise its policy limit argument is via a Fed.R.Civ.P. 59(e) motion to alter or amend this Court's judgment. (*Id.*) This Court does not agree.

As a starting point, the Court did not hold that American's breach of its duty to defend rendered it liable for the *entire* settlement amount. This Court's prior opinion did not reach the question of whether American was liable for the entire $2.0 million settlement amount and expressly reserved this and other questions for a later date "when they [could be] properly presented." *Illinois Tool Works*, 998 F.Supp. at 874 n. 7. Now is the proper time. And while it may be true that up until this time American had either over-

looked or failed to mention the limits of its policy, this Court can find no support for the notion that this argument has somehow been waived.[3] Besides, it is inconceivable that ITW did not anticipate that this argument would be raised when the face of American's Policy Declarations Page states that the coverage limit was $1.0 million for "Personal and Advertising Injury" or for "Each Occurrence."

■ Finally, ITW argues that although American's policy limit may be $1.0 million for "Personal and Advertising Injury," the policy also provides a $1.0 million limit for "Property Damage" as well. ITW claims that because American breached its duty to defend, ITW should be allowed to collect $1.0 million under each provision—i.e., under both property damage and personal injury provisions. (ITW Reply at 3.)

This is the first time that ITW, or RBK/Kaplan, has ever attempted to argue that American owes coverage under the "property damage" provision of the policy. The reason why is because ITW and its predecessors understood that American's "property damage" provision explicitly *excluded* recovery for damage caused by the "escape of pollutants." Thus, their only possibility for recovery would be under the "personal injury" provision. Yet, according to ITW, this Court held that "by breaching its duty to defend with respect to the clearly applicable personal injury provisions, American became estopped to raise *any* exclusions to coverage for the settlement, whether related to personal injury provisions or property damage provisions." (ITW Reply at 4.) This Court made no such holding, and there is no legal support for the proposition ITW has carelessly attributed to the Court.

---

2. Furthermore, ITW's argument on this point is at odds with its earlier contention that the $2.0 million settlement amount was "reasonable." If all the estimates presented by ITW set the costs of investigation and remediation for the ITW and RBK property at well over $1.0 million, it would be odd to suppose that American's presence at settlement negotiations would have significantly altered the ultimate settlement amount.

3. Even if American should have raised this argument as an "affirmative defense," there is no reason why this Court would not have permitted American to amend its affirmative defenses at this stage in the proceedings. *See, e.g., Akrabawi v. Carnes Co.*, 152 F.3d 688, 690 (7th Cir.1998) (defendant granted leave to amend affirmative defenses on final day of trial where it was a "logical outgrowth of the evidence" and it was "inconceivable" that plaintiff did not anticipate the argument).

While this Court did find that American was precluded from disputing coverage where the loss was potentially within the "personal injury" provision of its policy, the Court did not find that American was similarly precluded where the loss was *not* potentially within an applicable provision. In other words, this Court never held that once an insurer breaches a duty to defend under one provision of the policy, that insurer automatically becomes liable under every other provision of the policy. Not only is there no legal support for this statement, but it runs counter to the facts of this case. In its Complaint, ITW argued specifically that American was obligated to defend RBK and Kaplan under the *"personal injury"* provisions of American's policy. (Compl. at ¶¶ 26, 50.) Nowhere in its Complaint—or in any of its other filings up to this point—has ITW argued that American had a duty to defend RBK and Kaplan under its "property damage" provision because the pollution exclusion would clearly have precluded such a finding. As a result, in its previous decision, this Court *only* considered American's duty to defend under the "personal injury" provision. Accordingly, the Court finds that American can only be liable for that portion of the settlement up to the limits of its "personal injury" provision—$1.0 million.

### B. *Reasonableness of $2.0 Million Settlement*

In light of this Court's finding that American cannot be held responsible for any more than $1.0 million of the $2.0 million settlement, the "reasonableness" of the $2.0 million settlement is all but moot as to American. Even if the $2 million settlement is "unreasonable"—say, by a multiple of two—American could not argue in good faith that a $1.0 million settlement was unreasonable. Nor would the Court agree with the argument if it were made. Since $1.0 million is the amount that American will ultimately be forced to pay, given its policy limits, this Court sees no reason to spend more time discussing what is clearly a reasonable settlement.[4]

### IV. *ITW's Defense Costs*

[■] Consistent with this Court's February 28, 1998 Order, ITW has requested $113,375.62 for the defense costs incurred by RBK/Kaplan in defending against ITW's 1994 lawsuit. American objects to these costs and asserts that $110,849.94 of the $113,357.62 in defense costs have already been paid to Sidney Margolis—the insureds' lawyer—by U.S. Fire Insurance Company/International Insurance Company ("International"). American points out that an assignee acquires only the assignor's interests in the cause of action. *See Maneikis v. St. Paul Ins. Co. of Illinois*, 655 F.2d 818, 828 (7th Cir.1981). Since RBK/Kaplan would not be entitled to recover defense costs already paid by another insurer, American argues that ITW should be in no better position. ITW concedes that the bulk of RBK/Kaplan's defense costs were already paid by International and it offers no legal justification for its attempts to recover double costs. Accordingly, ITW is awarded $2,507.68 [$113,357.62—$110,849.94] in defense costs.

### V. *Prejudgment Interest*

[■] Last, but not least, ITW has asked for prejudgment interest on the amounts owed to it by American related to the settlement and defense costs. ITW's claim for prejudgment interest is premised upon the Illinois Interest Act which provides for an award of prejudgment interest—at 5%—for monies due under any "instrument of writing," which includes insurance policies. *See Central Nat. Chicago Corp. v. Lumbermens Mut. Cas. Co.*, 45 Ill.App.3d 401, 408, 3 Ill. Dec. 938, 359 N.E.2d 797, 802 (1st Dist.1977) ("An insurance policy is considered an 'instrument of writing' within the meaning of [the Act] and it has long been held that interest may be recovered from the time money becomes due under a policy."); *Ervin v. Sears Roebuck & Co.*, 127 Ill.App.3d 982, 991, 82 Ill.Dec. 709, 469 N.E.2d 243, 250 (5th Dist.1984).

American protests that in order for interest to be awarded, the sum due must be liquidated or subject to exact calculation. Here, according to American, the amount

---

4. Furthermore, since American is only obligated to pay $1.0 million of the $2.0 million settlement, issues surrounding the $90,000 payment by International are also moot.

due should not be considered "liquidated or subject to exact calculation" until this Court enters its present Order. This argument misstates the facts in this case. American knew that the settlement with RBK and Kaplan was executed on September 20, 1996 and that payment was due within 15 days of execution—or October 5, 1996. American also knew that pursuant to its policy limits, it would only be responsible for $1.0 million of the $2.0 million settlement amount—an amount clearly subject to "exact calculation." Thus, this Court finds that American is liable for prejudgment interest on $1.0 million, calculated from the date of settlement (October 5, 1996) until June 16, 1998—the date ITW's final brief was filed. According to this Court's calculations, that amount is $84,-794.52 ($136.99/day [$1,000,000 × 5% /365 days] × 619 days [10/5/96 to 6/16/98] ).

Given the uncertainty surrounding what defense costs were paid, when they were paid, and by whom, the Court will not award prejudgment interest on the $2,507.68 allegedly still owed to ITW by American.

## CONCLUSION

For the foregoing reasons, ITW's motion for summary judgment is granted in part and denied in part. ITW is awarded $1.0 million for the settlement, $84,794.52 for prejudgment interest on the settlement amount, and $2,507.68 in defense costs.